UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SURVEYS & ANALYSIS, INC.,

           Plaintiff,

    v.

SCOTT HULTINE,

           Defendant.

C.A. No. 04-CV-40195-FDS

## MEMORANDUM OF LAW IN SUPPORT OF SCOTT HULTINE'S MOTION TO TRANSFER THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

The convenience of the parties, the convenience of the witnesses, and the interests of justice compel the transfer of this case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). The defendant, Scott Hultine, lives and works in Illinois. He worked for the plaintiff, Surveys & Analysis, Inc. ("Surveys"), exclusively in Illinois. All of the operative events underlying this litigation occurred in Illinois, and all of Hultine's witnesses reside in Illinois. The subject of the underlying dispute is Hultine's current business relationship with Nicor Gas ("Nicor"), an Illinois natural gas distributor that provides gas to customers in northern Illinois. The material, non-party witnesses who work for Nicor and reside in Illinois cannot be compelled to testify in the District Court of Massachusetts. Further, because there is a related case between these parties pending in the Northern District of Illinois, consolidation of the cases would promote judicial economy and eliminate duplicative discovery. A significant issue in this case is whether an Illinois resident should be restricted from providing services to an Illinois natural gas company, and the case should therefore be heard in an Illinois court by an Illinois jury. For these reasons, the Court should transfer this case to the Northern District of Illinois.

## I.   BACKGROUND

### A.   Factual Background.

Hultine resides in Geneva, Illinois. Scott Hultine Affidavit ("Hultine Aff.") ¶ 1 (Tab A). He works for A.G.D., Inc. ("AGD"). *Id.* ¶ 8. AGD is an Illinois corporation with its principal place of business in Geneva, Illinois. *Id.* AGD performs leak surveys for natural gas companies. *Id.* AGD has sixteen full-time employees and two part-time employees. *Id.* ¶ 15. All of AGD's employees reside in Illinois. *Id.*

Surveys is a Massachusetts company with its principal place of business in Shrewsbury, Massachusetts. Complaint ¶ 1. Surveys provides leak detection services to companies in the natural gas industry. *Id.* ¶ 4. Surveys regularly conducts business in Illinois. Hultine Aff. ¶ 5.

On or about March 10, 1997, Hultine was hired by Surveys as a natural gas leak inspector. Hultine Aff. ¶ 2. Hultine was hired in Illinois. *Id.* He worked out of his home in Geneva, Illinois. *Id.* All of the work that Hultine performed for Surveys was performed in Illinois. *Id.* ¶ 4. During his employment, as many as fifteen other Surveys employees worked in Illinois. *Id.* ¶ 5.

Hultine provided leak detection services to Nicor while working for Surveys. Hultine Aff. ¶ 3. Nicor is a natural gas provider that distributes gas to customers in northern Illinois. *Id.* Nicor is based in Naperville, Illinois. *Id.* Hultine did not conduct any business in Massachusetts or travel to Massachusetts in connection with his work with Surveys. *Id.* ¶ 4.

On or about April 16, 1999, Surveys required Hultine to sign an Employment, Nondisclosure & Non-Competition Agreement ("the Agreement"). *See* Complaint ¶ 6 and Agreement, attached to Complaint as Exhibit 1. Hultine signed the Agreement in Illinois without an opportunity to negotiate its terms. Hultine Aff. ¶ 6. The Agreement purports to prohibit Hultine from working in any "competitive" business for a period of three years within the

geographic area "of [the] Midwest and any contiguous states." *See* Agreement § 1.6. The
Agreement states that "this contract shall be interpreted according to the laws of the
Commonwealth of Massachusetts without application of that states [*sic*] choice of law rules" and
"the proper jurisdiction and venue for this action shall be the Commonwealth of Massachusetts."
*Id.* § 1.10. The Agreement does not provide that Massachusetts is the *exclusive* venue. *Id.*

On or about July 9, 2002, Surveys terminated Hultine's employment. Hultine Aff. ¶ 7.
Following the termination of his employment, Hultine began working for AGD in Illinois. *Id.* ¶
8. Hultine is the Vice President of AGD and his wife, Rebecca Hultine, is the President. *Id.*
AGD does not conduct any business in Massachusetts. *Id.* ¶ 9.

### B.    Procedural History.

On September 2, 2004, Surveys filed a complaint against Hultine in the Superior Court
for Massachusetts, Worcester County. *See* Complaint. Hultine's business relationship with
Nicor is the central issue in this case. Surveys alleges, among other things, that Surveys had a
long-standing contract with Nicor, *id.* ¶ 9; while employed by Surveys, Hultine worked
exclusively on the Nicor contract, *id.* ¶ 10; Hultine had access to strategic business information
and obtained confidential information about Surveys to enhance his relationship with Nicor and
damage Surveys' relationship with Nicor, *id.* ¶¶ 11, 14; following his termination from
employment with Surveys, Hultine began providing leak detection services to Nicor, *id.* ¶¶ 15-
16; and Hultine's new employer – AGD – was awarded a contract with Nicor, *id.* ¶ 17. Surveys
brought claims against Hultine for breach of contract, breach of the covenant of good faith and
fair dealing, breach of fiduciary duty, tortious interference with contractual or advantageous
relations, misappropriation of trade secrets, and injunctive relief. *Id.* ¶¶ 19-48.

On September 27, 2004, Hultine filed a complaint against Surveys in the United States
District Court for the Northern District of Illinois. Hultine Aff. ¶ 10 and Complaint attached as

Tab 1 to Hultine's Affidavit.  Like Surveys' complaint, Hultine's complaint asserts claims

arising out of Hultine's employment with Surveys in Illinois.  *Id.*  He alleges that Surveys failed

to pay him overtime, holiday, and vacation pay in violation of federal and Illinois law.  *Id.*

Hultine brings his action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, the Portal-

to-Portal Act, 29 U.S.C. § 251, *et seq.*, the Illinois Minimum Wage Law, 820 ILCS 105/1, *et*

*seq.*, and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.  Id.*

On September 27, 2004 (the same day that Hultine filed his complaint against Surveys in

Illinois), Hultine removed this action on diversity grounds to the United States District Court for

the District of Massachusetts.  Hultine now moves this Court to transfer this action to the United

States District Court for the Northern District of Illinois.  *See* 28 U.S.C. § 1404(a).

## II.    ARGUMENT

### A.    THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF ILLINOIS UNDER SECTION 1404(A) FOR THE CONVENIENCE OF THE PARTIES AND WITNESSES AND IN THE INTEREST OF JUSTICE.

#### 1.    Standard Under Section 1404(a).

Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest
> of justice, a district court may transfer any civil action to
> any other district or division where it might have been
> brought.

28 U.S.C. § 1404(a).  The relevant factors concerning the transfer of a case pursuant to section

1404(a) include the convenience of the parties, the convenience of the witness, the location of

the documents, and the possibility of consolidation.  *See Stewart Org., Inc. v. Ricoh Corp.*, 487

U.S. 22, 30-31 (1988); *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000).  As described

in more detail below, these factors warrant the transfer of this action to the Northern District of

Illinois.

- 4 -

**2.    The Convenience of the Parties Favors Transfer to Illinois Because Hultine Resides in Illinois and Surveys Conducts Business in Illinois.**

The convenience of the parties strongly supports transfer to Illinois because Hultine – an individual defendant of limited means – resides in Illinois and Surveys conducts business in Illinois. *See Digital Equip. Corp. v. Electronic Memories & Magnetics Corp.*, 452 F. Supp. 1262, 1267 (D. Mass. 1978) (transferring the action from Massachusetts to California because, among other things, the defendant's principal place of business was in California). Hultine resides in Illinois, and he works in Illinois for an Illinois company. Hultine Aff. ¶¶ 1, 2, 8. Although Surveys is based in Massachusetts, during Hultine's employment Surveys employed as many as fifteen employees in Illinois and it regularly conducts business in northern Illinois. Hultine Aff. ¶ 5. Hultine, an individual defendant, currently earns an annual income of approximately $35,000, while Surveys is a large company that conducts business throughout the United States. Hultine Aff. ¶ 14; Complaint ¶ 4. As such, Surveys is the party in the best position to absorb the costs of this litigation. *See Symbol Technologies, Inc. v. Quantum Assocs., Inc.*, No. 01-10983-GAO, 2002 WL 225934, at *2 (D. Mass. Jan. 30, 2002) (transferring case to California and noting convenience factor "focuses on the comparative financial abilities of the parties and the cost of litigation should be borne by the party in the best position to absorb and spread it") (Tab B). In these circumstances, the convenience of the parties weighs in favor of transfer to Illinois.

**3.    The Convenience of the Witnesses Compels Transfer Because All of Hultine's Witnesses – Including Material Witnesses from Nicor – Reside in Illinois.**

"The convenience of the witnesses is 'probably the most important factor . . . in passing on a motion to transfer under 28 U.S.C. § 1404(a).'" *Brant Point Corp. v. Poetzsch*, 671 F. Supp. 2, 3 (D. Mass. 1987) (quoting Charles A. Wright *et al.*, 15 *Federal Practice and*

*Procedure* § 3851 at 415 (1986)) (transferring case to North Carolina when defendant's key witnesses were located in North Carolina, even though the plaintiff's principal was a Massachusetts resident). *See also Princess House, Inc. v. Lindsey,* 136 F.R.D. 17, 19-20 (D. Mass. 1991) (transferring case to Missouri where defendants' witnesses were located in Missouri, even though the plaintiff identified witnesses in Massachusetts and other states); *Digital Equip.,* 452 F. Supp. at 1267 (transferring case to California and noting that although plaintiff will be required to travel to prosecute the case, "many witnesses" concerning the central issues in the case were in California). "The court must consider the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify." *Princess House,* 136 F.R.D. at 18.

All of Hultine's witnesses – including material, third-party witnesses – reside in Illinois. Hultine expects to call the following witnesses:

(1).    *Scott Hultine.* Scott is the Vice President of AGD. He is expected to testify about all of the key events, including the circumstances of the signing of the Agreement, his employment with Surveys, the nature of the business information provided by Surveys to its employees, Surveys' poor service to Nicor, and his business activities after Surveys terminated his employment. He lives in Geneva, Illinois.

(2).    *Rebecca Hultine.* Rebecca is the President of AGD. She is expected to testify about the establishment of AGD, the negotiations between AGD and Nicor, and the work that AGD performs for Nicor. She lives in Geneva, Illinois.

(3).    *Steve Knowlton.* Knowlton is a former employee of Surveys and a current employee of AGD. He is expected to testify about the termination of Hultine's employment with

Surveys, the nature of the business information provided by Surveys to its employees, and the work performed for Nicor by both Surveys and AGD. Knowlton lives in St. Charles, Illinois.

(4).    *Andre Zwerschke.* Zwerschke is a former employee of Surveys and a current employee of AGD. He is expected to testify about the nature of the business information provided by Surveys to its employees, and the work performed for Nicor by both Surveys and AGD. Zwerschke lives in Westmont, Illinois.

(5).    *Paul Qualiato.* Qualiato is a program administrator at Nicor. He is expected to testify about the work performed for Nicor by both Surveys and AGD, Nicor's concerns about the services provided by Surveys, the public safety issues concerning natural gas distribution and the importance of leak surveys, and Nicor's decision to hire AGD. Qualiato lives in Downers Grove, Illinois.

(6).    *Somali Tomczak.* Tomczak works in the code compliance department at Nicor. She is expected to testify about the work performed for Nicor by both Surveys and AGD, Nicor's concerns about the services provided by Surveys, the public safety issues concerning natural gas distribution and the importance of leak surveys, and Nicor's decision to hire AGD. Tomczak lives in Naperville, Illinois.

(7).    *Roy Rodriguez.* Rodriguez is a field test/auditor for Nicor. He is expected to testify about the work performed for Nicor by both Surveys and AGD. Rodriguez lives in Lansing, Illinois.

(8).    *Patty McKibbon.* McKibbon is a trainer for Nicor. She is expected to testify about the work performed for Nicor by both Surveys and AGD. McKibbon lives in Illinois (town unknown).

Hultine Aff. ¶¶ 12, 13, 14.

The convenience of these eight witnesses – all of whom offer critical testimony on the key issues in this case – compel the transfer of this case to Illinois. *See Princess House,* 136 F.R.D. at 19-20; *Brant Point Corp.*, 671 F. Supp. at 3-4; *Digital Equip.*, 452 F. Supp. at 1267. Given that Hultine's witnesses reside in Illinois and none of his expected witnesses reside in Massachusetts, this factor weighs heavily in favor of transfer to Illinois.

Further, because Hultine's business relationship with Nicor is the central issue in this case, it is critical that witnesses from Nicor  – all of whom reside in Illinois – can be compelled to testify. *See Princess House*, 136 F.R.D. at 20 ("the court should also consider whether the witnesses can be compelled to testify in either the transferor or the transferee district").  Surveys alleges, among other things, that Surveys had a long-standing contract with Nicor, *id.* ¶ 9; as a Surveys employee, Hultine worked exclusively on the Nicor contract, *id.* ¶ 10; Hultine obtained confidential information about Surveys to enhance his relationship with Nicor and damage Surveys' relationship with Nicor, *id.* ¶¶ 11, 14; Hultine provided leak detection services to Nicor after his employment ended, *id.* ¶¶ 15-16; and Hultine's new employer – AGD – was awarded a contract with Nicor, *id.* ¶ 17.  Nicor employees are expected to testify about, among other things, the nature and scope of Surveys' work for Nicor, the nature and scope of AGD's current work for Nicor, Nicor's concerns about services provided by Surveys, and Nicor's decision to form a business relationship with AGD.  Hultine Aff. ¶ 13.  Without these witnesses, Hultine would suffer substantial prejudice. *See Princess House*, 136 F.R.D. at 19-20 (discussing generally the importance of live testimony of critical witnesses on material issues).  Further, because the District of Massachusetts could not compel these Nicor employees to provide live, in court testimony, *see* Fed. R. Civ. P. 45 (b)(2), Hultine would be forced to rely on deposition evidence on the most critical issues of this case. *See Princess House*, 136 F.R.D. at 20 ("[i]t is well settled that a court should procure live testimony of material non-party witnesses at trial rather than

- 8 -

being forced to rely upon deposition evidence."); *Brant Point Corp.*, 671 F. Supp. at 5 ("[A] trial in Massachusetts would consist substantially of the reading of deposition transcripts. . . . [S]uch a result is unacceptable when the action can be transferred to a district where attendance can be compelled and live testimony can be presented to the jury."). Because four Nicor witnesses living in Illinois are expected to play a central role in this case, the case should be transferred to Illinois.

The cost of obtaining the presence of witnesses and the disruption to AGD's business are factors that also weigh heavily in favor of transfer to Illinois. *See Princess House*, 136 F.R.D. at 19-20 (addressing burdens and expenses of Missouri witnesses traveling to Massachusetts); *Burstein v. Applied Extrusion Techs., Inc.*, 829 F. Supp. 106, 112 (D. Del. 1992) (transferring case to reduce disruption and financial hardship to defendant's business that would have resulted from absence of key employees). The cost of travel and lodging of eight witnesses from Illinois would be substantial. *See Princess House,* 136 F.R.D. at 19-20. Hultine is an individual defendant without the same financial resources as Surveys, a large corporation conducting business nationwide, and he should not be forced to take on this substantial financial burden.[1] *See id.* (considering financial strength of parties and concluding that individual defendants' financial strength and witness travel expenses supported transfer to Missouri); *see also Symbol Technologies, Inc.,* 2002 WL 225934, at *2 (transferring case to California and noting that "the cost of litigation should be borne by the party in the best position to absorb and spread it"). Further, leak surveys must be performed under strict timelines set by law and, consequently, requiring four of AGD's sixteen full-time employees to travel to Massachusetts would disrupt AGD's business. Hultine Aff. ¶¶ 15, 16. The absence of Hultine – who directs and manages

---

[1] Hultine was earning approximately $45,000 annually when his employment with Surveys ended, and he currently earns a salary of approximately $35,000. Hultine Aff. ¶ 17.

AGD's operations – would lead to further disruption. *See Burstein*, 829 F. Supp. at 112; Hultine

Aff. ¶ 16. The transfer of this case to Illinois would significantly reduce these burdens.

   In sum, the convenience of the witnesses – the *most important factor* of the section

1404(a) analysis – weighs heavily in favor of transfer to Illinois. Transfer of this case to Illinois

will (1) ensure that material, non-party witnesses will be subject to the Court's subpoena powers,

(2) reduce costs and disruption of AGD's business, and (3) promote the interests of justice by

offering a forum where live, in-court testimony can be heard on the critical issues.

### 4. The Key Documents Are Located in Illinois.

   Transfer of this case is appropriate because the key documents and records are located in

Illinois. Transfer should be granted if it facilitates easier access to the relevant documents and

records. *See Coady*, 223 F.3d at 11 (identifying "availability of documents" as a factor to be

considered in a section 1404(a) analysis and directing district court to transfer case from

Massachusetts to District of Columbia). Here, the key documents in this case (*e.g.*,

communications between AGD and Nicor, Hultine's personnel records) are located at Hultine's

home in Illinois. Hultine Aff. ¶ 18. Other documents maintained by Nicor concerning the extent

of its relationship with Hultine are likely maintained at Nicor's corporate headquarters in Illinois.

*Id.* Moreover, the Nicor employees who authored such documents will likely be outside the

reach of this Court's subpoena power. *See Falconwood Financial Corp. v. Griffin*, 838 F. Supp.

836, 841 (S.D.N.Y. 1993) (transferring case and discussing limitations on availability of

documents where authors of documents cannot be compelled to testify). To the extent that

Surveys maintains some documents in Massachusetts, those documents may be easily copied and

sent to Illinois in connection with this case. This factor weighs in favor of transferring the case

to Illinois.

**5.    The Forum Selection Clause is Substantially Outweighed by the Other Factors That Compel Transfer of this Case to Illinois.**

A forum selection clause is but *one factor* in a section 1404(a) analysis. *See Stewart Org.*, 487 U.S. at 31. A forum selection clause "should receive neither dispositive consideration . . . nor no consideration . . . , but rather the consideration for which Congress provided in § 1404(a)." *Id.* A forum selection clause may be overcome by other section 1404(a) factors. *See Red Bull Assoc. v. Best Western Int'l, Inc.,* 862 F.2d 963, 966-67 (2d Cir. 1998) (affirming district court's decision not to transfer case notwithstanding forum selection clause calling for venue in another state); *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498-99 (9th Cir. 2000) (same).

The other section 1404(a) factors in this case – most notably the convenience of witnesses – overwhelm the forum selection clause and support transfer to Illinois. *See Red Bull Assoc,* 862 F.2d at 966-67; *Jones,* 211 F.3d at 498-99. Indeed, other than the choice of law and forum selection clause in the Agreement, Massachusetts has virtually no connection to this case. Hultine signed the Agreement in Illinois, without an opportunity to negotiate the terms. He worked for Surveys in Illinois, and he lived in Illinois. He never traveled to Massachusetts in connection with his work. Nicor – the client at issue in this case – is an Illinois natural gas company that services customers in northern Illinois. All of the operative events that form the basis of the Complaint occurred in Illinois. In these circumstances, the forum selection clause is outweighed by other factors that strongly support transfer to Illinois.[2]

_____

[2] The forum selection clause in the Agreement does not provide that Massachusetts is the *exclusive* venue. *See Autoridad de Energia Electrica de Puerto Rico v. Ericsson, Inc.*, 201 F.3d 15, 17-18 (1st Cir. 2000) (analyzing forum selection clause that stated that Puerto Rico law governed contract and that "the parties agree to submit to the jurisdiction of the courts of the Commonwealth of Puerto Rico" and concluding that clause was permissive and was "not a negative exclusion of jurisdiction in other courts"). Any ambiguities in the Agreement must be construed against Surveys as the drafter of the Agreement. *See Lanier Professional Servs, Inc. v. Ricci*, 192 F.3d 1, 4-5 (1st Cir. 1999) (construing ambiguous phrase in noncompete agreement against the employer where employer drafted the agreement). Here, the clause at issue  – "the proper jurisdiction and venue for this action shall be the

Similarly, although Surveys' choice of forum in which to file is to be considered, the

choice of forum carries less weight "where . . . the operative facts of the case have no material

connection with this district." *See Brant Point Corp.*, 671 F. Supp. at 3-4 (concluding plaintiff's

choice of forum in Massachusetts was overcome by other section 1404(a) factors such as

convenience of witnesses and interests of justice); *Princess House*, 136 F.R.D. at 22-23

(concluding plaintiff's choice of forum in Massachusetts was overcome by other factors,

including location of the alleged wrongful acts and the "minimal connections" with

Massachusetts); *Digital Equip. Corp.*, 452 F. Supp. at 1267 (concluding plaintiff's choice of

forum overcome by convenience of the witnesses). Surveys' choice of forum is of diminished

importance given that all of the operative events underlying this litigation occurred in Illinois.

### 6.    The Interests of Justice Strongly Favor Transfer to Illinois Because of the Possibility of Consolidation and the Illinois Interests at Issue.

Consolidation of the actions in Illinois promotes the interests of justice. *See Coady*, 223

F.3d at 11 (noting that "possibility of consolidation" is a factor in a section 1404(a) analysis);

*Davox Corp. v. Digital Sys. Int'l, Inc.,* 846 F. Supp. 144, 149 (D. Mass. 1993) (transferring case

to Washington where factual issues overlapped, case involved common discovery, and

consolidation conserved judicial resources); *In re Viatron Computer Sys. Corp. Litig.*, 86 F.R.D.

431, 434 (D. Mass. 1980) (transferring case for purposes of consolidation in section 1404(a)

analysis). Both cases arise out of Hultine's employment with Surveys. Discovery could be

streamlined if both cases were in Illinois. The two cases will likely address some of the same

---

Commonwealth of Massachusetts" – simply recognizes that Massachusetts shall be considered a proper venue
among many possible venues, without identifying Massachusetts as the exclusive venue. *See id.* Whether the clause
is mandatory or permissive, it is only one factor of many in the section 1404(a) analysis. *See Stewart Org., Inc.*, 487
U.S. at 31. Here, those other section 1404(a) factors overwhelmingly support transfer to Illinois.

issues – including the scope of his employment and termination of his employment –and these cases will have common discovery, such as the depositions of many of the same witnesses.[3]

Further, both cases involve issues of strong concern to Illinois: restraining an Illinois resident in his ability to earn a living; limiting competition in the field of gas leak detection, which is a matter of public safety; and enforcing Illinois wage and hour laws for the benefit of an Illinois resident. *See Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 991 (E.D.N.Y. 1991) (transferring case and noting "it is more appropriate for this case to be tried to a jury selected from residents of the state having the most interest in this litigation . . . ."). These issues should be heard in an Illinois court by an Illinois jury. For these reasons, the case should be transferred to Illinois for the purposes of consolidation.

### B.    TRANSFER TO THE NORTHERN DISTRICT OF ILLINOIS IS PROPER BECAUSE IT IS A COURT IN WHICH THIS CASE "MIGHT HAVE BEEN BROUGHT" ORIGINALLY.

The Northern District of Illinois is a court in which this case "might have been brought." *See* 28 U.S.C. § 1404(a). Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332(a) because there is complete diversity. Personal jurisdiction exists because Hultine resides in Illinois. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a) because Hultine resides in the district and all of the operative facts giving rise to Surveys' claim allegedly occurred there. Accordingly, transfer to the Northern District of Illinois is proper under section 1404(a).

---

[3] The fact that Surveys filed its complaint first is of no consequence where, as here, it filed only about three weeks before Hultine and the important factors – including the critical factor of the convenience of the witnesses – point in favor of transfer to Illinois. *See Affinity Memory & Micro v. K & Q Enterprises, Inc.*, 20 F. Supp. 2d 948, 954-55 (E.D. Va. 1998) (transferring case to court of second-filed action where case filed two weeks after first complaint and convenience of witnesses and other factors weighed in favor of transfer).

## III.    CONCLUSION

For the reasons set forth above, Hultine respectfully requests that the Court enter an

Order transferring this action to the United States District Court for the Northern District of

Illinois pursuant to 28 U.S.C. § 1404(a).

Respectfully submitted,

SCOTT HULTINE

By his attorneys,

HOLLAND & KNIGHT LLP

/s/ *David J. Santeusanio*
Paul G. Lannon, Jr. (BBO # 563404)
David J. Santeusanio (BBO # 641270)
10 St. James Avenue
Boston, Massachusetts  02116
(617) 523-2700

Dated:  October 4, 2004

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2004, I electronically filed this Memorandum of Law in Support of Scott Hultine's Motion to Transfer this Action to the United States District Court for the Northern District of Illinois with the Clerk of Court using the CM/EMF system, which will send notification of such filing to the following attorneys of record:

Michael P. Angelini, Esq.
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156

James J. Richards, Esq.
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156


/s/ David J. Santeusanio
David J. Santeusanio, Esq.
Holland & Knight LLP
10 St. James Avenue
Boston, Massachusetts 02116


# 2282605_v3

- 15 -