UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SURVEYS & ANALYSIS, INC. )<br>  )<br>     Plaintiff, )<br>v.  ) <br>  )<br>SCOTT HULTINE, )<br>  )<br>     Defendant. ) | C.A. No. 04-CV-40195-FDS |

## AFFIDAVIT OF PAUL GARABEDIAN

I, Paul Garabedian, hereby state and depose as follows:

1. My names is Paul Garabedian. I am the Chief Operating Officer of Surveys Analysis, Inc. ("Surveys"). Surveys is located in Shrewsbury, Massachusetts.

2. Surveys is a small Massachusetts business that provides leak detection services to companies in the natural gas industry. Surveys markets and sells its services primarily to customers located in the Northeastern and Midwestern United States. Surveys has approximately 45 employees, down from approximately 60 over the past 3 years. Surveys has one full-time and one part-time employee in Illinois.

3. Although Surveys is controlled from Shrewsbury and has no offices outside of Shrewsbury, Surveys has employees who work and reside outside of Massachusetts who work on Surveys' out of state contracts. Surveys delegates substantial responsibility to these employees. Accordingly, Surveys has employees agree to strict confidentiality and non-compete agreements as a condition of employment. Surveys' employment agreements require that disputes be resolved in Massachusetts. Otherwise, Surveys could not afford to enforce its agreements with its employees.

4. Surveys hired Scott Hultine ("Hultine") on or about March 10, 1997. Hultine signed an Employment, Nondisclosure, and Non-Competition Agreement dated April 16, 1999 (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit 1. The Agreement forbids Hultine, among other things, from competing with Surveys for a period of three (3) years following termination of his employment with Surveys. Hultine also submitted to the jurisdiction and venue of this Court pursuant to Section 1.10 of the Agreement.

5. At the time it hired Hultine, Surveys had a long-standing contract with Nicor, Inc.'s subsidiary, Nicor Gas ("Nicor"), a natural gas provider in Illinois. Revenue from Nicor represented a substantial portion of Surveys' total annual revenue, which Surveys has now lost.

6. During his employment with Surveys, Hultine worked exclusively on the Nicor contract. Hultine hired, trained and managed Surveys' employees at Nicor. Hultine was trusted with the responsibility of dealing with Nicor's management on Surveys' behalf. Hultine had access to and became very familiar with virtually every facet of Surveys' business and the Nicor contract. In many areas, Hultine had complete control over Surveys' business at Nicor.

7. During his employment with Surveys, Hultine facilitated the flow of all information between Surveys and Nicor and Surveys and its Illinois employees. This included faxing and mailing all billing, payroll and personnel records to Massachusetts. Hultine had a company-issued cell phone and called Surveys personnel in Massachusetts several times per week and sometimes, several times per day.

8. I expect that the following non-party witnesses will testify in this matter:

| Name and Position | Expected Areas of Testimony | Residence |
|---|---|---|
| Ken Harber (Former Surveys Employee) | Terms of Hultine's employment; Hultine's execution of Agreement; witness of Agreement. | Westborough, MA |
| Patricia Carrigan (Former Surveys Employee) | Terms of Hultine's employment; Hultine's execution of Agreement; nature of business information provided by Surveys to Hultine. | Shrewsbury, MA |
| Bridget Foley (Former Surveys Employee) | Nature of business information provided by Surveys to Hultine; termination of Hultine's employment; Surveys' relationship with Nicor. | Worcester, MA |
| John Whitney (Former Surveys Employee) | Nature of business information provided by Surveys to Hultine; termination of Hultine's employment. | Shrewsbury, MA |
| Brian Cotting (Former Surveys Employee) | Terms of Hultine's employment; Hultine's execution of Agreement; | Grafton, MA |

9. I expect that the following current employees of Surveys will testify in this matter:

| Name and Position | Expected Areas of Testimony | Residence |
|---|---|---|
| John Baez (Current Surveys Employee) | Nature of business information provided by Surveys to Hultine; termination of Hultine's employment; Surveys' relationship with Nicor; damages to Surveys as a result of Hultine's breach. | Lockport, New York |
| Paul Garabedian (Current Surveys Employee) | Damages to Surveys as a result of Hultine's breach of Agreement; termination of Hultine's employment; Surveys' relationship with Nicor. | Shrewsbury, MA |

10. Given that all but one of Surveys' expected witnesses lives in Worcester County, Massachusetts, the federal court in the Central District of Massachusetts is more convenient for them.

11. If Surveys' employees travel from Massachusetts to Illinois to serve as witnesses in this case, Surveys' business will be disrupted. Additionally, because I oversee and direct the work of Surveys' employees, my travel to Illinois will further disrupt Surveys' business operations. In addition, being forced to pursue this matter in Illinois will cause additional financial hardship to Surveys.

12. The majority of Surveys' potential witnesses no longer work for Surveys and are not under Surveys' control. It is unlikely that they would voluntarily travel to Illinois in connection with this matter.

13. I have reviewed AGD, Inc.'s ("AGD") website and based on that website it appears that AGD was established to service mid-west utility companies, like Nicor. It also appears that Scott Hultine promotes that his experience in the utility industry is the key to AGD's success. A true and accurate copy of www.agd-us.com is attached hereto as Exhibit 2.

14. I have reviewed the website for the Illinois Secretary of State. It appears that AGD was incorporated on April 9, 2002 and that Scott Hultine is its President, while still an employee of Surveys. A true and accurate copy of the Corporation File Detail Report from the Illinois Secretary of State is attached hereto as Exhibit 3.

Signed under the pains and penalties of perjury this 1Y day of October, 2004.

_____
Paul Garabedian

# EXHIBIT 1

# SURVEYS & ANALYSIS, INC.

EMPLOYMENT, NONDISCLOSURE, & NON-COMPETITION AGREEMENT

AGREEMENT, made this __16__ day of __April__, 199_7_, BY __Scott Hulting__, of __Surveys + Analysis__

TO: Surveys & Analysis, Inc., of 538 Hartford Turnpike, Shrewsbury, Massachusetts 01545.

1. In consideration of my employment/continuing employment in any capacity with Surveys & Analysis, Inc., and of the salary or wages paid for my services in the course of such employment, I agree to the following:

1.1. I agree to communicate to Surveys & Analysis, Inc. promptly and fully all inventions, discoveries, concepts and ideas, whether patentable or not, including but not limited to hardware and apparatus, processes and methods, formulas, computer programs and techniques, as well as improvements thereof and knowledge related thereto (hereinafter collectively referred to as "DEVELOPMENTS"), conceived, completed, or reduced to practice (whether solely by me or jointly with others) during the period of my employment by Surveys & Analysis, Inc., which are related to the present or prospective business, work or investigations of Surveys & Analysis, Inc., or which result from any work I perform with the use of any equipment, facilities, materials or personnel of Surveys & Analysis, Inc., or which result from or are suggested by any work which I may do for or on behalf of Surveys & Analysis, Inc.;

1.2. I agree to assign, and do hereby assign, to Surveys & Analysis, Inc. or Surveys & Analysis, Inc's designee, my entire right, title and interest in and to all such DEVELOPMENTS and all copyrights and mask work rights in such DEVELOPMENTS and any patent applications filed and patents granted thereon, including those in foreign countries; and, both during my employment by Surveys & Analysis, Inc., and thereafter, to execute any patent papers covering such DEVELOPMENTS as well as any papers that Surveys & Analysis, Inc. may consider necessary or helpful in obtaining or maintaining said patents during the prosecution of patent applications thereon or during the conduct of any interference, litigation or any other matter in connection therewith; all expenses incident to the filing of any such interference, litigation or other controversy shall be borne by Surveys & Analysis, Inc.;

1.3. I agree not to use (other than for SURVEYS & ANALYSIS, INC.) and not to directly or indirectly publish or otherwise disclose at any time (except as my duties to Surveys & Analysis, Inc. may require) either during or subsequent to my employment, any of Surveys & Analysis, Inc's "CONFIDENTIAL INFORMATION" (as defined below), whether or not the same was conceived, originated, discovered or developed, in whole or in part, by me;

1.4. I agree that CONFIDENTIAL INFORMATION means information or material which is not generally available to or used by others or the utility or value of which is not generally known or recognized as standard practice, whether or not the underlying details are in the public domain, including:

  1.4.1. information or material which relate to Surveys & Analysis, Inc's inventions, technological developments, "know-how," purchasing, accounting, merchandising, or licensing;

  1.4.2. information contained in or derived from Surveys & Analysis, Inc's Client Lists, whether inactive, active or prospective;

  1.4.3. trade secrets as defined in the Restatement of Torts;

  1.4.4. software in various stages of development (source code, object code, documentation, diagrams, flow charts), designs, drawings, specifications, models, data and customer information; and

  1.4.5. any information of the type described above which Surveys & Analysis, Inc. obtained from another party and which Surveys & Analysis, Inc. treats as proprietary or designates as confidential, whether or not owned or developed by Surveys & Analysis, Inc.;

  1.5. I agree to deliver to Surveys & Analysis, Inc. promptly upon request or on the date of termination of my employment all documents, copies thereof and other materials in my possession pertaining to the business of Surveys & Analysis, Inc., including, but not limited to, CONFIDENTIAL INFORMATION, and thereafter to promptly return documents and copies thereof and other materials in my possession pertaining to the business of Surveys & Analysis, Inc. and originating with Surveys & Analysis, Inc. that come into my possession;

  1.6. I agree for a period of three (3) years following termination of my employment with Surveys & Analysis, Inc. within the geographical area of _Midwest_ and any contiguous states not to engage in or contribute my knowledge to any work, employment or investment which is competitive with or similar to the service, product, process, or apparatus of Surveys & Analysis, Inc. or on which I worked or with respect to which I had access to CONFIDENTIAL INFORMATION while at the company at any time during my employment; however, I shall be permitted to engage in such proposed work or activity, and Surveys & Analysis, Inc. shall furnish me a written consent to that effect, if I furnish to Surveys & Analysis, Inc. clear and convincing written evidence, including assurances from me and my new employer, that the fulfillment of my duties in such proposed work or activity will not cause me to disclose, base judgment upon, or use any such CONFIDENTIAL INFORMATION. It is understood that the geographical area set forth in this clause is divisible so that if this clause is invalid or unenforceable in an included geographical area, that area is severable and this clause remains in effect for the remaining included geographic areas in which the clause is valid. It is understood that the time period set forth in this clause is divisible so that if this clause is invalid or unenforceable for an included time period, that time period is severable and this clause remains in effect for the longest remaining time period in which the clause is valid;

  1.7. I agree to assign to Surveys & Analysis, Inc. my entire right, title and interest in and to any DEVELOPMENTS and all copyrights, mask work rights, patent applications filed and patents granted thereon, including those in foreign countries with respect to DEVELOPMENTS relating to my activities while working for Surveys & Analysis, Inc. and conceived or made by me, alone or with others, within one year after termination of my employment if conceived as a result of and if attributable to work done during such employment and relates to a method, substance, machine, article of manufacture or improvement therein within the scope of the business of Surveys & Analysis, Inc.;

1.8. I agree that this Agreement represents the full and complete understanding between me and Surveys & Analysis, Inc. with respect to the subject matter hereof and supersedes all prior representations and understandings, whether oral or written;

1.9. I agree that my obligations under this Agreement shall be binding upon my heirs, executors, administrators, or other legal representatives or assigns, and that this Agreement shall inure to the benefit of Surveys & Analysis, Inc., its successors and assigns.

1.10 I agree that this contract shall be interpreted according to the laws of the Commonwealth of Massachusetts without application of that states choice of law rules. I also agree that the proper jurisdiction and venue for this action shall be the Commonwealth of Massachusetts.

2. I represent, except as I have written below, that I have no agreements with or obligations to others with respect to DEVELOPMENTS, PROPRIETARY INFORMATION or CONFIDENTIAL INFORMATION, belonging either to Surveys & Analysis, Inc. or to others, or in conflict with the foregoing.

3. I understand that this Agreement may not, on behalf of or in respect to Surveys & Analysis, Inc., be changed, modified, released, discharged, abandoned or otherwise terminated, in whole or in part, except by an instrument in writing signed by the President of Surveys & Analysis, Inc.

4. I agree that during or upon termination of my employment with Surveys & Analysis, Inc., I shall, if requested by Surveys & Analysis, Inc., reaffirm my recognition of the importance of maintaining the confidentiality of Surveys & Analysis, Inc's CONFIDENTIAL INFORMATION and reaffirm all of the obligations set forth in Paragraph 1 of this Agreement.

_Scott Hultin_  
Employee (Print Name)

_Kenneth Henly_  
Witness

_Scott Hult_  
Employee's Signature

_4/16/99_  
Date

# EXHIBIT 2





*trustworthy*
*dedicated service*
*proven*
*industry experience*
*commitment*
*to excellence*

**AGD** was established in Illinois midwest utility companies. We fo detection of natural gas leaks. C trained gas leak specialists walk at lines inspecting the ground while m air quality with highly sensitive ec more remote locations similar testing using a mobile survey unit. All ga thoroughly documented including GP

**Advanced Gas Detection**
Phone: (630) 208-9209
**EMAIL**

Home | About AGD | Services | Tec
Contact Info | Employment

© 2003 AGD, Inc.   -   Advanced Gas Detection
Webwork by ARK Design





To provide the highest gas leak detection se
utility companies while meeting all mɑ
deadlines

To offer a work environment that promot
development and strengthens the relations
employer and employees. In addition, we air
employees interesting and satisfying work chɑ

Our company was established to focus solely
detection services. In doing this we bring
best technology and the highest standards. ɪ
these specialized services in a way our clier
We offer all that you would expect fr
corporation along with the benefit of de.
dedicated family owned organization. We fee
for a highly effective mutual success relations

### COMPANY SUMMARY

**AGD** was established in Illinois to service midwest utility companies.

**Rebecca Hultine, president of AGD**, applies her business and finance degree and 15 years experience in business to the creation and management of AGD.

**Scott Hultine, vice-president of AGD**, utilizes his business and management degree and his experience in the utility industry as the key to our successful operation.

**AGD aims** to provide the highest quality gas leak detection services to protect people and environment.

**Each employee of AGD** is an integral component to achieving our goals. For this reason, AGD provides extensive training. We offer an excellent wage and incentive for dedicated service.

**AGD promotes** a safe work enviroment by educating the employees on safety issues related to their activities.

**AGD complies** with an U.S. Department of Transportation regulations, including adherence to and administration of Drug and Alcohol Prevention and testing programs. This program is administered by the nation's premier comprehensive drug program administration service.

**Any natural gas leaks will be detected and documented.**

# EXHIBIT 3



SERVICES   PROGRAMS   PRESS   PUBLICATIONS   DEPARTMENTS   CONTACT

# CORPORATION FILE DETAIL REPORT

| | | | |
|---|---|---|---|
| **Entity Name** | AGD, INC. | **File Number** | 62155043 |
| **Status** | GOODSTANDING | | |
| **Entity Type** | CORPORATION | **Type of Corp** | DOMESTIC BCA |
| **Incorporation Date (Domestic)** | 04/09/2002 | **State** | ILLINOIS |
| **Agent Name** | JAMES N CHAKIRES | **Agent Change Date** | 03/07/2003 |
| **Agent Street Address** | 30W052 ST ANDREW LN | **President Name & Address** | SCOTT HULTINE 628 FORESTVIEW DRIVE GENEVA 60134 |
| **Agent City** | WEST CHICAGO | **Secretary Name & Address** | SAME |
| **Agent Zip** | 60185-0000 | **Duration Date** | PERPETUAL |
| **Annual Report Filing Date** | 06/15/2004 | **For Year** | 2004 |

**Return to the Search Screen**

BACK TO CYBERDRIVEILLINOIS.COM