| CIVIL ACTION COVER SHEET | DOCKET NO(S) 04-1727A | Trial Court of Massachusetts Superior Court Department County: WORCESTER |

| **PLAINTIFF(S)** Surveys & Analysis, Inc. 538 Hartford Turnpike, Shrewsbury, MA 01545 | **DEFENDANT(S)** Scott Hultine 628 Forest View Drive, Geneva, IL 60134 |

| **ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE** Michael P. Angelini, Esquire, Bowditch & Dewey, 311 Main Street, P.O. Box 15156, Worcester, MA 01615-0156 Board of Bar Overseers number: 019340 | **ATTORNEY** (if known) LLP |

### Origin code and track designation

Place an x in one box only:

[X] 1. F01 Original Complaint
[ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
[ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
[ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
[ ] 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A99 | Breach of Employment, Non-Disclosure and Non-Competition Agreement | ( F ) | ( X ) Yes    ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
   1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
   2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
   3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
   4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
   5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
   Subtotal $ . . . . . . . . . . .
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
F. Other documented items of damages (describe)
   $ . . . . . . . . . . .
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)
   Defendant's tortious acts as alleged in the Complaint have resulted in lost revenues to plaintiff in excess of $550,000.
   $ . . . . . . . . . . .
   TOTAL $ . . . . . . . . . . .

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

Defendant breached an Employment, Non-Disclosure and Non-Competition Agreement with Plaintiff. Plaintiff claims lost revenues in an amount exceeding $550,000.

TOTAL $. . . . . . . . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____    DATE: 9/2/04

A true copy by photostatic process.
Attest:
Asst. Clerk _____

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

# COMMONWEALTH OF MASSACHUSETTS

Worcester, ss.

Superior Court
Department of the Trial Court
of the Commonwealth
Civil Action

No. 04-1727A

SURVEYS & ANALYSIS, INC., )
)
)
)
Plaintiff (s) )
) **SUMMONS**
v. )
)
SCOTT HULTINE )
)
Defendant (s) )

\* To the above-named Defendant: Scott Hultine, 628 Forest View Drive, Geneva, IL 60134.

You are hereby summoned and required to serve upon James I. Richards, Esquire
..................................................................................., plaintiff's attorney,
whose address is Bowditch & Dewey, LLP, 311 Main Street, P.O. Box 15156, Worcester, MA
an answer to the complaint which is herewith served upon you, within 20 days after 01615-0156
service of this summons upon you, exclusive of the day of service. If you fail to do so,
judgement by default will be taken against you for the relief demanded in the complaint.
You are also required to file your answer to the complaint in the SUPERIOR COURT
Department of the Trial Court at WORCESTER either before service upon plaintiff's
attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counter-
claim any claim which you may have against the plaintiff which arises out of the
transaction of occurrence that is the subject matter of the plaintiff's claim or you will
thereafter be barred from making such claim in any other action.

Witness, SUZANNE V. DEL VECCHIO. Esquire, at Worcester, the...2nd...................
day of .......September.......................................in the year of our Lord two thousand and
....four...........

Clerk

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption.
    If a separate summons is used for each defendant, each should be addressed to that particular defendant.

PLEASE CIRCLE TYPE OF ACTION INVOLVED: TORT — MOTOR VEHICLE TORT —
CONTRACT EQUITABLE RELIEF — CH. 93A — MEDICAL MALPRACTICE — OTHER.

\* NOTICE TO DEFENDANT: You need not appear personally in court to answer the complaint, but
if you claim to have a defense, either you or your attorney must serve a copy of your written
answer within 20 days as specified herein AND also file the original in the Clerk's Office, Superior
Court, Room 21.

A true copy by photostatic process
Attest:

Asst. Clerk

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss                SEP 0 2 2004        SUPERIOR COURT DEPARTMENT
                          OF COURTS                OF THE TRIAL COURT

SURVEYS & ANALYSIS, INC.          )        04-1727 A
              Plaintiff,          )
                                  )
v.                                )
                                  )
SCOTT HULTINE,                    )
                                  )
              Defendant.          )

## COMPLAINT

### PARTIES

1.      Plaintiff, Surveys & Analysis, Inc. ("Surveys") is a Massachusetts corporation

with its primary place of business at 538 Hartford Turnpike, Shrewsbury, Massachusetts 01545.

2.      Defendant, Scott Hultine ("Hultine") is an individual, who on information and

belief, resides at 628 Forest View Drive, Geneva, Illinois 60134.  Hultine is a former employee

of Surveys who, on information and belief, is an owner, principle and officer of A.G.D., Inc.

("AGD").

### JURISDICTION AND VENUE

3.      Hultine has submitted to the jurisdiction and venue of this Court pursuant to

Section 1.10 of an Employment, Nondisclosure, and Non-Competition Agreement dated April

16, 1999 (the "Agreement").  A true and correct copy of the Agreement is attached hereto as

Exhibit 1.

### FACTS

4.      Surveys is in the business of providing leak detection services to companies in the

natural gas industry.  Surveys operates a facility in Shrewsbury, Massachusetts.  Surveys markets

{J:\CLIENTS\lit\300482\0001\00449226.DOC;3}

and sells its services primarily to customers located in the Northeastern and Midwestern United States.

5.    Surveys hired Hultine as a Natural Gas Leak Detection Consultant on or about March 10, 1997. Hultine had no previous experience in the natural gas leak detection industry.

6.    As a condition of his employment with Surveys, Hultine signed the Agreement. See Exhibit 1.

7.    The Agreement forbids Hultine from competing with Surveys for a period of three (3) years following termination of his employment with Surveys. Specifically, the Agreement states:

> "I agree for a period of three (3) years following termination of my employment with Surveys & Analysis, Inc. within the geographical area of mid-west and any contiguous states not to engage in or contribute any knowledge to any work, employment or investment which is competitive with or similar with the service, product, process or apparatus with Surveys & Analysis, Inc. or on which I work with respect to which I had access to confidential information while at the company at any time during my employment." See Agreement, 1.6.

8.    The Agreement also forbid Hultine from disclosing Survey's confidential information. Specifically, the Agreement states:

> "I agree not to use (other than for SURVEYS & ANALYSIS, INC.) and not to directly or indirectly publish or otherwise disclose at any time (except as my duties to Surveys & Analysis, Inc. may require) either during or subsequent to my employment, any of Surveys & Analysis, Inc.'s "CONFIDENTIAL INFORMATION" (as defined below), whether or not the same was conceived, originated, discovered or developed, in whole or in part, by me." See Agreement, 1.3.

9.    At the time it hired Hultine, Surveys had a long-standing contract with Nicor, Inc.'s subsidiary, Nicor Gas ("Nicor"), a natural gas provider in Illinois. Revenue from Nicor represented approximately fifteen percent (15%) of Surveys' total annual revenue.

2

10. During his employment with Surveys, Hultine worked exclusively on the Nicor contract. Hultine managed Surveys' employees at Nicor. Hultine had access to and became very familiar with virtually every facet of Surveys' business and the Nicor contract.

11. Among other things, Hultine knew of and had access to Surveys' strategic business information, including information relating to leak detection processes and methods, productivity rates, wage structures, hiring practices, pricing strategies and structures, customer lists and sales and marketing efforts.

12. Unknown to Surveys, on or about April 9, 2002, while still an employee of Surveys, Hultine incorporated AGD with the Illinois Secretary of State, and designated himself as President. Hultine was still an employee of Surveys and knew that under the terms of the Agreement he could not compete with Surveys.

13. According to AGD's website, AGD "was established in Illinois to service midwest utility companies," the precise region covered by the Agreement. Further, AGD advertises AGD as a company established to focus "solely on gas leak detection" and advertises Hultine's "experience in the utility industry as the key to our successful operation."

14. After forming AGD, Hultine continued his employment with Surveys, apparently to gain further confidential information about Surveys, to enhance his relationship with Nicor and to damage Surveys' relationship with Nicor.

15. On or about July 9, 2002, Hultine's employment with Surveys was terminated.

16. Hultine and AGD thereafter immediately began providing leak detection services to Nicor, in express violation of the Agreement, substantially reducing Surveys' benefit in its contract with Nicor.

17.    In late 2003, AGD was awarded a contract with Nicor worth approximately $1.5 million over three (3) years to provide natural gas leak detection services, in direct competition with Surveys.

18.    On information and belief, Hultine is the sole shareholder and employee of AGD.

## CAUSES OF ACTION

### COUNT I
**Breach of Contract**

19.    Surveys repeats and realleges all of the foregoing paragraphs of the Complaint as if fully set forth herein.

20.    Hultine is contractually obligated, among other things, to not compete against Surveys for three (3) years after termination of his employment with Surveys and not to disclose Surveys' confidential information.

21.    Hultine has breached his Agreement with Surveys as set forth above.

22.    Surveys has been damaged by Hultine's breach of contract.

### COUNT II
**Breach of Covenant of Good Faith and Fair Dealing**

23.    Surveys repeats and realleges all of the foregoing paragraphs of the Complaint as if fully set forth herein.

24.    Hultine entered into an Agreement with Surveys. This Agreement is governed by Massachusetts law and, under Massachusetts law, Hultine had an obligation and duty of good faith and fair dealing with Surveys.

25.    Hultine breached and/or violated his obligation and duty of good faith and fair dealing as a result of the conduct described above.

4

26. Surveys has been damaged by Hultine's breach of the implied covenant of good faith and fair dealing.

## COUNT III
### Breach of Fiduciary Duty

27. Surveys repeats and realleges all of the foregoing paragraphs of the Complaint as if fully set forth herein.

28. Hultine was in a fiduciary relationship with Surveys and owed fiduciary duties to Surveys, including a duty of loyalty, a duty not to compete and a duty not to disclose Surveys' confidential information.

29. For the reasons stated above, Hultine breached his fiduciary duties to Surveys.

30. Surveys has been damaged by Hultine's breach of his fiduciary duties, and is entitled to damages as a result of such breach.

## COUNT IV
### Tortuous Interference with Contractual/Advantageous Relationships

31. Surveys repeats and realleges all of the foregoing paragraphs of the Complaint as if fully set forth herein.

32. Surveys had a binding contract with Nicor and an advantageous business relationship with Nicor. Hultine had knowledge of Surveys' contract with Nicor and of Surveys' advantageous relationship with Nicor.

33. On information and belief, Hultine intentionally interfered by improper means and/or with improper motive with Surveys' advantageous relationship and contract with Nicor.

34. Surveys has lost its advantageous relationship with Nicor and has substantially lost the benefit of its contract with Nicor as a direct result of Hultine's tortuous interference.

35. Surveys has been damaged by Hultine's tortuous interference.

5

## COUNT V
### Misappropriation of Trade Secrets

36.    Surveys repeats and realleges all of the foregoing paragraphs of the Complaint as if fully set forth herein.

37.    Hultine possesses trade secret information owned by Surveys.

38.    Hultine was expressly and impliedly obligated not to make use of any Surveys' owned trade secret information.

39.    Hultine unlawfully took Surveys' trade secrets and intentionally converted them to his own use without authorization.

40.    Surveys has been damaged by Hultine's use of Surveys' owned trade secret information.

## COUNT VI
### Injunctive Relief

41.    Surveys repeats and realleges all of the foregoing paragraphs of the Complaint as if fully set forth herein.

42.    Hultine has used, and unless enjoined by this Court will continue to use, Surveys' trade secrets, know-how, confidential information and good will.

43.    Such use has violated and will continue to violate the terms of the Agreement for his own benefit and to the detriment of Surveys.

44.    Unless Hultine is restrained from the actions described above, Surveys will suffer irreparable injury.

45.    There is a substantial likelihood that Surveys will prevail on the merits of one or all of its claims set forth herein.

46.    Surveys is at risk to be harmed to a greater degree by the absence of the injunctive

6

relief sought herein than Hultine would be harmed by Hultine by the granting of such relief.

48.    Such injunctive relief would be in the public interest.

## PRAYERS FOR RELIEF

WHEREFORE, Surveys & Analysis, Inc. respectfully requests that this Court:

(a)    Issue preliminary and than permanent injunctive relief enjoining Hultine, his agents, servants, affiliates, officers, directors, employees, employers, attorneys and those persons in active concert or participation with Hultine from:

(i)   using and/or disclosing any trade secrets, know-how or other confidential, technical or business information of Surveys;

(ii)  contacting and otherwise communicating with Surveys' customers and suppliers until July 10, 2005;

(iii) communicating with any potential customer about Surveys' products and related business until July 10, 2005;

(iv) engaging in any other activities prohibited by the express terms of the Agreement with Surveys;

(v)  competing with Surveys until July 10, 2005;

(vi) contacting or communicating with any current Surveys employee having knowledge of the trade secrets, know-how, confidential and proprietary information of Surveys;

(b)    Require Hultine, his agents, servants, affiliates, officers, directors, employers and attorneys and those persons in active concert or participation with Hultine to immediately return to Surveys all documents and other materials in his possession or control which originally came from Surveys, or which were developed by or used in connection with Surveys' business, and to

7

{J:\CLIENTS\lit\300482\0001\00449226.DOC;3}

deliver to Surveys all documents and other information evidencing Hultine's use of Surveys' know-how, confidential information and trade secrets;

    (c)    Impose a constructive trust for the benefit of Surveys over all profits, advantages, and payments Hultine, his agents, employers and assigns have received and/or receive by virtue of Hultine's wrongful acts described herein;

    (d)    Require that Hultine account to Surveys for all profits, income, advantages and payments that Hultine, his agents, employers and assigns have received and/or received by virtue of Hultine's wrongful acts described herein;

    (e)    Award compensatory damages to Surveys to the full extent permitted by law;

    (f)    Order such other legal and equitable relief as is just and appropriate.

## JURY TRIAL BY DEMAND

Surveys & Analysis, Inc. hereby demands a trial by jury for all issues so triable.

SURVEYS & ANALYSIS, INC.
By its attorneys,

Michael P. Angelini (BBO# 019340)
James J. Richards (BBO# 642937)
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
(508) 791-3511

Dated: September 2, 2004

A true copy by photostatic process
Attest
Asst. Clerk

8

## SURVEYS & ANALYSIS, INC.

### EMPLOYMENT, NONDISCLOSURE, & NON-COMPETITION AGREEMENT

AGREEMENT, made this _16_ day of _April_ , 199 _9_, BY _Scott Hultine_ , of _Surveys + Analysis_

TO: Surveys & Analysis, Inc., of 538 Hartford Turnpike, Shrewsbury, Massachusetts 01545.

1.    In consideration of my employment/continuing employment in any capacity with Surveys & Analysis, Inc., and of the salary or wages paid for my services in the course of such employment, I agree to the following:

1.1.    I agree to communicate to Surveys & Analysis, Inc. promptly and fully all inventions, discoveries, concepts and ideas, whether patentable or not, including but not limited to hardware and apparatus, processes and methods, formulas, computer programs and techniques, as well as improvements thereof and knowledge related thereto (hereinafter collectively referred to as "DEVELOPMENTS"), conceived, completed, or reduced to practice (whether solely by me or jointly with others) during the period of my employment by Surveys & Analysis, Inc., which are related to the present or prospective business, work or investigations of Surveys & Analysis, Inc., or which result from any work I perform with the use of any equipment, facilities, materials or personnel of Surveys & Analysis, Inc., or which result from or are suggested by any work which I may do for or on behalf of Surveys & Analysis, Inc.;

1.2.    I agree to assign, and do hereby assign, to Surveys & Analysis, Inc. or Surveys & Analysis, Inc's designee, my entire right, title and interest in and to all such DEVELOPMENTS and all copyrights and mask work rights in such DEVELOPMENTS and any patent applications filed and patents granted thereon, including those in foreign countries; and, both during my employment by Surveys & Analysis, Inc., and thereafter, to execute any patent papers covering such DEVELOPMENTS as well as any papers that Surveys & Analysis, Inc. may consider necessary or helpful in obtaining or maintaining said patents during the prosecution of patent applications thereon or during the conduct of any interference, litigation or any other matter in connection therewith; all expenses incident to the filing of any such interference, litigation or other controversy shall be borne by Surveys & Analysis, Inc.;

1.3.    I agree not to use (other than for SURVEYS & ANALYSIS, INC.) and not to directly or indirectly publish or otherwise disclose at any time (except as my duties to Surveys & Analysis, Inc. may require) either during or subsequent to my employment, any of Surveys & Analysis, Inc's "CONFIDENTIAL INFORMATION" (as defined below), whether or not the same was conceived, originated, discovered or developed, in whole or in part, by me;

1.4.    I agree that CONFIDENTIAL INFORMATION means information or material which is not generally available to or used by others or the utility or value of which is not generally known or recognized as standard practice, whether or not the underlying details are in the public domain, including:

1.4.1.    information or material which relate to Surveys & Analysis, Inc's inventions, technological developments, "know-how," purchasing, accounting, merchandising, or licensing;

1.4.2.    information contained in or derived from Surveys & Analysis, Inc's Client Lists, whether inactive, active or prospective;

1.4.3.    trade secrets as defined in the Restatement of Torts;

1.4.4.    software in various stages of development (source code, object code, documentation, diagrams, flow charts), designs, drawings, specifications, models, data and customer information; and

1.4.5.    any information of the type described above which Surveys & Analysis, Inc. obtained from another party and which Surveys & Analysis, Inc. treats as proprietary or designates as confidential, whether or not owned or developed by Surveys & Analysis, Inc.;

1.5.    I agree to deliver to Surveys & Analysis, Inc. promptly upon request or on the date of termination of my employment all documents, copies thereof and other materials in my possession pertaining to the business of Surveys & Analysis, Inc., including, but not limited to, CONFIDENTIAL INFORMATION, and thereafter to promptly return documents and copies thereof and other materials in my possession pertaining to the business of Surveys & Analysis, Inc. and originating with Surveys & Analysis, Inc. that come into my possession;

1.6.    I agree for a period of three (3) years following termination of my employment with Surveys & Analysis, Inc. within the geographical area of _____Midwest_____ and any contiguous states not to engage in or contribute my knowledge to any work, employment or investment which is competitive with or similar to the service, product, process, or apparatus of Surveys & Analysis, Inc. or on which I worked or with respect to which I had access to CONFIDENTIAL INFORMATION while at the company at any time during my employment; however, I shall be permitted to engage in such proposed work or activity, and Surveys & Analysis, Inc. shall furnish me a written consent to that effect, if I furnish to Surveys & Analysis, Inc. clear and convincing written evidence, including assurances from me and my new employer, that the fulfillment of my duties in such proposed work or activity will not cause me to disclose, base judgment upon, or use any such CONFIDENTIAL INFORMATION. It is understood that the geographical area set forth in this clause is divisible so that if this clause is invalid or unenforceable in an included geographical area, that area is severable and this clause remains in effect for the remaining included geographic areas in which the clause is valid. It is understood that the time period set forth in this clause is divisible so that if this clause is invalid or unenforceable for an included time period, that time period is severable and this clause remains in effect for the longest remaining time period in which the clause is valid;

1.7.    I agree to assign to Surveys & Analysis, Inc. my entire right, title and interest in and to any DEVELOPMENTS and all copyrights, mask work rights, patent applications filed and patents granted thereon, including those in foreign countries with respect to DEVELOPMENTS relating to my activities while working for Surveys & Analysis, Inc. and conceived or made by me, alone or with others, within one year after termination of my employment if conceived as a result of and if attributable to work done during such employment and relates to a method, substance, machine, article of manufacture or improvement therein within the scope of the business of Surveys & Analysis, Inc.;

Surveys & Analysis, Inc., Employment Nondisclosure, & Non-Competition Agreement
Page 2 of 3

1.8.    I agree that this Agreement represents the full and complete understanding between me and Surveys & Analysis, Inc. with respect to the subject matter hereof and supersedes all prior representations and understandings, whether oral or written;

1.9.    I agree that my obligations under this Agreement shall be binding upon my heirs, executors, administrators, or other legal representatives or assigns, and that this Agreement shall inure to the benefit of Surveys & Analysis, Inc., its successors and assigns.

1.10    I agree that this contract shall be interpreted according to the laws of the Commonwealth of Massachusetts without application of that states choice of law rules. I also agree that the proper jurisdiction and venue for this action shall be the Commonwealth of Massachusetts.

2.    I represent, except as I have written below, that I have no agreements with or obligations to others with respect to DEVELOPMENTS, PROPRIETARY INFORMATION or CONFIDENTIAL INFORMATION, belonging either to Surveys & Analysis, Inc. or to others, or in conflict with the foregoing.

3.    I understand that this Agreement may not, on behalf of or in respect to Surveys & Analysis, Inc., be changed, modified, released, discharged, abandoned or otherwise terminated, in whole or in part, except by an instrument in writing signed by the President of Surveys & Analysis, Inc.

4.    I agree that during or upon termination of my employment with Surveys & Analysis, Inc., I shall, if requested by Surveys & Analysis, Inc., reaffirm my recognition of the importance of maintaining the confidentiality of Surveys & Analysis, Inc's CONFIDENTIAL INFORMATION and reaffirm all of the obligations set forth in Paragraph 1 of this Agreement.

_Scott Hultin_
Employee (Print Name)

_Scott Hult_
Employee's Signature

_Kenneth Hanley_
Witness

_4/16/99_
Date

A true copy by photostatic process
Attest: _Catherine Brown_
Asst. Clerk

Surveys & Analysis, Inc., Employment Nondisclosure, & Non-Competition Agreement
Page 3 of 3

# Commonwealth of Massachusetts
## County of Worcester
## The Superior Court

*J. Richards*

CIVIL DOCKET# **WOCV2004-01727-A**

RE:   **Surveys & Analysis Inc v Hutline**

TO: Michael P Angelini, Esquire
Bowditch & Dewey
311 Main Street
P. O. Box 15156
Worcester, MA 01615-0156

### TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 12/01/2004 |
| Response to the complaint filed (also see MRCP 12) | 01/30/2005 |
| All motions under MRCP 12, 19, and 20 filed | 01/30/2005 |
| All motions under MRCP 15 filed | 01/30/2005 |
| All discovery requests and depositions completed | 06/29/2005 |
| All motions under MRCP 56 served and heard | 07/29/2005 |
| Final pre-trial conference held and firm trial date set | 08/28/2005 |
| Case disposed | 10/27/2005 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**
This case is assigned to session A sitting in Rm 12 (Session A) at Worcester Superior Court.

Dated: 09/02/2004

Francis A. Ford
Clerk of the Courts

BY: Joanne C. Herring
Assistant Clerk

Location: Rm 12 (Session A)
Telephone: 508-770-1899, Ext. 122 or Ext. 121 (Session Clerk)

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130

Check website as to status of case: http://ma-trialcourts.org/tcic

cvdtracf_2.wpd 1045800 inidoc01 monepair

A true copy by photostatic process
Attest:
Asst. Clerk

# COVER SHEET

Superior Court Department
County: **WORCESTER**

| | |
|---|---|
| PLAINTIFF(S)<br>Surveys & Analysis, Inc.<br>538 Hartford Turnpike, Shrewsbury, MA 01545 | DEFENDANT(S)<br>Scott Hultine<br>628 Forest View Drive, Geneva, IL 60134 |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE<br>Michael P. Angelini, Esquire, Bowditch & Dewey,<br>311 Main Street, P.O. Box 15156, Worcester, MA<br>01615-0156<br>Board of Bar Overseers number: 019340 | ATTORNEY (If known)<br>LLP |

## Origin code and track designation

Place an x in one box only:

- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A99 | Breach of Employment, Non-Disclosure and Other Contract Instruments | ( F ) | ( X ) Yes     ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

## TORT CLAIMS
### (Attach additional sheets as necessary)

Documented medical expenses to date:
1. Total hospital expenses .................................................... $............
2. Total Doctor expenses ..................................................... $............
3. Total chiropractic expenses .............................................. $............
4. Total physical therapy expenses ....................................... $............
5. Total other expenses (describe) ........................................ $............

Subtotal $............

Documented lost wages and compensation to date ......................... $............
Documented property damages to date .................................... $............
Reasonably anticipated future medical and hospital expenses ......... $............
Reasonably anticipated lost wages ...................................... $............
Other documented items of damages (describe)

$............

Brief description of plaintiff's injury, including nature and extent of injury (describe)

Defendant's tortious acts as alleged in the Complaint have resulted in lost revenues to plaintiff in excess of $550,000.

$............
TOTAL $............

## CONTRACT CLAIMS
### (Attach additional sheets as necessary)

Provide a detailed description of claim(s):

Defendant breached an Employment, Non-Disclosure and Non-Competition Agreement with Plaintiff. Plaintiff claims lost revenues in an amount exceeding $550,000.

TOTAL $. ..........

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____     DATE: 9/2/04

C-6 mtc005-11/99
S.C. 1-2000

A **true copy** by photostatic process
Attest:
Asst. Clerk

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.

SUPERIOR COURT
CIVIL ACTION NO. 04-1727A

SURVEYS & ANALYSIS, INC.,

Plaintiff,

v.

SCOTT HULTINE,

Defendant.

## NOTICE OF FILING NOTICE OF REMOVAL

Please take notice that on September 27, 2004, the defendant Scott Hultine filed in the United States District Court for the District of Massachusetts his Notice of Removal of this action to the United States District Court. A copy of the Notice of Removal is attached as Exhibit A.

Pursuant to 28 U.S.C. § 1446(d), this notice is hereby provided to the Superior Court of the Commonwealth of Massachusetts, Worcester County, to effect removal.

Respectfully submitted,

SCOTT HULTINE

By his attorneys,

HOLLAND & KNIGHT LLP

Paul G. Lannon, Jr. (BBO # 563404)
David J. Santeusanio (BBO # 641270)
10 St. James Avenue
Boston, Massachusetts 02116
(617) 523-2700

Dated: September 27, 2004

I hereby certify under the pains and penalties
# 22--- of perjury that this document was served upon
counsel for all parties in this case on
9/27/04          by Handly Mail

A true copy by photostatic process
Attest:  _____
         Asst. Clerk

### WORCESTER SUPERIOR COURT
### Case Summary
### Civil Docket

## WOCV2004-01727
## Surveys & Analysis Inc v Hultine

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 09/02/2004 | **Status** | Disposed: transfered to other court (dtrans) | | |
| **Status Date** | 09/28/2004 | **Session** | A - Civil A (12 Worcester) | | |
| **Origin** | 1 | **Case Type** | A99 - Misc contract | | |
| **Lead Case** | | **Track** | F | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 12/01/2004 | **Answer** | 01/30/2005 | **Rule12/19/20** | 01/30/2005 |
| **Rule 15** | 01/30/2005 | **Discovery** | 06/29/2005 | **Rule 56** | 07/29/2005 |
| **Final PTC** | 08/28/2005 | **Disposition** | 10/27/2005 | **Jury Trial** | Yes |

#### PARTIES

**Plaintiff**
Surveys & Analysis Inc
538 Hartford Turnpike
Shrewsbury, MA 01545
Active 09/02/2004

**Private Counsel 019340**
Michael P Angelini
Bowditch & Dewey
311 Main Street
P. O. Box 15156
Worcester, MA 01615-0156
Phone: 508-791-3511
Fax: 508-798-3537
Active 09/02/2004 Notify

**Defendant**
Scott Hultine
628 Forest View Drive
Geneva, IL 60134
Served: 09/02/2004
Served (answr pending) 09/24/2004

#### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 09/02/2004 | 1.0 | Complaint & civil action cover sheet filed and rule 29 statement-CJ |
| 09/02/2004 | | Origin 1, Type A99, Track F. |
| 09/02/2004 | | Filing fee paid in the amount of $240.00 including $15.00 surcharge and $20.00 security fee.$275.00 |
| 09/03/2004 | 2.0 | Plaintiff Surveys & Analysis Inc's MOTION for appointment of special process server  Francis Trapasso appointed. |
| 09/03/2004 | | MOTION (P#2) ALLOWED (Peter W. Agnes, Jr., Justice) |
| 09/24/2004 | 2.3 | SERVICE RETURNED: Scott Hultine(Defendant) 9/2/04 (last and usual place of abode) & affid. of Wm Vincent |
| 09/24/2004 | 2.4 | Affidavit of James J. Richards re: service of Scott Hultin by cert. mail-return receipt |
| 09/28/2004 | 3.0 | Deft. Scott Hultine notice of removal-Case REMOVED US District Court of Massachusetts |

A true copy by photostatic process
Attest:
Asst. Clerk *(signature)*

I HEREBY ATTEST AND CERTIFY ON
THAT THE FOREGOING DOCUMENT IS A FULL TRUE
AND CORRECT COPY OF THE ORIGINAL ON FILE
IN MY OFFICE AND IN MY LEGAL CUSTODY

CLERK, U.S. DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BY:

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

SURVEYS & ANALYSIS, INC.,

Plaintiff,

v.

SCOTT HULTINE,

Defendant.

FILED
IN CLERKS OFFICE

2004 SEP 27 P 12: 51

U.S. DISTRICT COURT
DISTRICT OF MASS.

COPY    04-1727A

04-12067MLW

## NOTICE OF REMOVAL

Scott Hultine hereby gives notice that pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, he

is removing this action from the Commonwealth of Massachusetts Superior Court, Worcester

County, to the United States District Court for the District of Massachusetts. The grounds for

removal are set forth below.

1.      Mr. Hultine is the defendant in a civil action filed by Surveys & Analysis, Inc.

("Surveys") in the Commonwealth of Massachusetts Superior Court, Worcester County,

captioned *Surveys & Analysis, Inc. v. Scott Hultine*, Civil Action No. 04-1727A ("the Pending

Action"). The Summons and Complaint in the Pending Action were mailed to Mr. Hultine on

September 2, 2004. This Notice, therefore, is timely filed. *See* 28 U.S.C. § 1446(b).

2.      Based on information contained in the Complaint, Mr. Hultine asserts that

Surveys is a Massachusetts corporation with its principal place of business in Massachusetts.

Mr. Hultine is a resident and citizen of Illinois.

3.      The Complaint concerns Mr. Hultine's employment with Surveys. Surveys

asserts claims for breach of contract, breach of the covenant of good faith and fair dealing,

breach of fiduciary duty, tortious interference with contractual/advantageous relations, misappropriation of trade secrets, and injunctive relief.

4.    Surveys seeks damages for, among other things, alleged lost revenues in excess of $550,000. *See* Civil Action Cover Sheet; Complaint (Prayers for Relief). Mr. Hultine has a good faith basis to believe that the alleged damages exceed $75,000, exclusive of interest and costs.

5.    The United States District Court for the District of Massachusetts has diversity jurisdiction over this matter because there is complete diversity of the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

6.    Copies of all process, pleadings, and orders served on Mr. Hultine in the Pending Action are attached to this Notice as Exhibit A.

7.    Pursuant to Local Rule 81.1(a), within thirty (30) days of the date hereunder, Mr. Hultine will file with this Court certified or attested copies of all records and proceedings in the state court and will file with this Court a certified or attested copy of all docket entries in the state court action.

WHEREFORE, Mr. Hultine requests that the Pending Action proceed before this Court as an action properly removed.

Respectfully submitted,

SCOTT HULTINE

By his attorneys,

HOLLAND & KNIGHT LLP

Paul G. Lannon, Jr. (BBO # 563404)
David J. Santeusanio (BBO # 641270)
10 St. James Avenue
Boston, Massachusetts  02116
(617) 523-2700

Dated:  September 27, 2004

# 2258784_v1

A true copy by photostatic process
Attest:
Asst. Clerk

I hereby certify under the pains and penalties
of perjury that this document was served upon
counsel for all parties in this case on
9/27/04          by Hand/by Mail

- 3 -

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
NO. 04-1727A

SEP 29 2004

ATTEST

SURVEYS & ANALYSIS, INC.    )
                             )
              Plaintiff,     )
                             )
v.                           )        AFFIDAVIT OF JAMES J. RICHARDS
                             )
SCOTT HULTINE,               )
                             )
              Defendant.     )

    I, James J. Richards, on oath depose and say that I have personal knowledge of the facts

set forth herein.

    1.    I represent plaintiff Surveys & Analysis, Inc. in the above-captioned matter;

    2.    Pursuant to M.G.L. Chapter 223A, I made service of process upon the defendant

Scott Hultine by mailing copies of the Complaint, Summons and Civil Action Cover Sheet by

certified mail, return receipt requested.  That mailing was made to the defendant, Scott Hultine,

628 Forest View Drive, Geneva, IL 60134.  A photocopy of the service letter dated September 2,

2004, and the signed return receipt are attached hereto as <u>Exhibit A</u>.


    Signed under the pains and penalties of perjury this 24th day of September, 2004.

                                        _____
                                        James J. Richards, BBO #642937

A true copy by photostatic process
Attest:
    Asst. Clerk

***Bowditch***
***&Dewey***
ATTORNEYS

Direct telephone: (508) 926-3426
Direct facsimile: (508) 929-3038
Email: jrichards@bowditch.com

September 2, 2004

<u>Via Certified Mail/Return Receipt Requested</u>
<u>7001 0360 0000 8778 4142</u>

Mr. Scott Hultine
628 Forest View Drive
Geneva, IL 60134

Re:    <u>Surveys & Analysis, Inc. v. Scott Hultine</u>
       <u>Worcester Superior Court, No. 04-1727A</u>

Dear Mr. Hultine:

This firm represents Surveys & Analysis, Inc. Pursuant to Massachusetts General Laws Chapter 223A and Rule 4(e) of the Massachusetts Rules of Civil Procedure, you are hereby served with the enclosed copies of the Summons, Complaint and Civil Action Cover Sheet.

Please feel free to contact me with any questions or concerns.

Very truly yours,

James J. Richards

JJR/rl
Enclosures

cc:    Mr. Paul Garabedian, Chief Operating Officer (w/out encls.)
       Michael P. Angelini, Esquire (w/out encls.)

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write *"Return Receipt Requested"* on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

Mr. Scott Hultine
628 Forest View Drive
Geneva, IL 60134

4a. Article Number

7001 0360 0000 8778 4142

4b. Service Type

☐ Registered       ☒ Certified
☐ Express Mail       ☐ Insured
☐ Return Receipt for Merchandise   ☐ COD

7. Date of Delivery

9/7/04

5. Received By: *(Print Name)*

*Scott Hultine*

6. Signature: *(Addressee or Agent)*

X *[signature]*

8. Addressee's Address *(Only if requested and fee is paid)*

PS Form **3811**, December 1994      102595-98-B-0229      Domestic Return Receipt

Is your **RETURN ADDRESS** completed on the reverse side?

Thank you for using Return Receipt Service.

9/24

SEP 2 0 2004

ATTEST

**State of Massachusetts**

**General No.: 04-1727A**

**County of**

## AFFIDAVIT OF SERVICE

WILLIAM VINCENT deposes and says that he/she is a licensed or registered employee of a Private Detective Agency, licensed by the Illinois Department of Professional Regulation and therefore authorized, pursuant to the provisions of Chapter 735, Code of Civil Procedure  Section 5/2-202, Illinois Compiled Statutes, to serve process in the above cause, and that the defendant was served in the following manner:

On 9/2/2004 at 9:44:00 PM by leaving a true and correct copy of the attached SUMMONS and COMPLAINT  on Hultine, Scott as shown below:

Substitute service was made by leaving a true and correct copy of the SUMMONS and COMPLAINT , at the usual place of abode of Hultine, Scott with a person residing therein, to wit Rebecca Hultine, Wife, a person of the age of 13 years or upwards, who was informed of the contents thereof.

Said service was effected at 624 Forest View, Geneva, IL   60134

Furthermore, I caused to be mailed, first class postage fully prepaid, a copy of the SUMMONS and COMPLAINT in a sealed envelope addressed to Hultine, Scott, 624 Forest View, Geneva, IL 60134

Description of Person Served: Sex: F   Height: 506   Weight: 135   Race: W   Age: 38sih

Additional or Other Information:

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to such matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

2 Sep 04
_____
Dated

William Vincent
_____
William Vincent
117-000192

A true copy by process
Attest
Ass
Catherine Brennan

# COMMONWEALTH OF MASSACHUSETTS

Worcester, ss.

Superior Court
Dept. of the Trial Court
Of the Commonwealth
Civil Action

No: 04-1727A

| | |
|---|---|
| SURVEYS & ANALYSIS, INC. | ) |
| | ) |
| Plaintiff(s), | ) |
| v. | ) |
| | ) |
| SCOTT HULTINE | ) |
| | ) |
| Defendant(s). | ) |

GEN. NO. 99LM0517

## AFFIDAVIT

William Vincent, being first duly sworn on oath, deposes and states as follows:

1.    My name is William Vincent and I am over 18 years of age.

2.    I am employed by VTS Investigations, LLC., a licensed private detective agency in the State of Illinois and I am not a party to this suit.

3.    I am licensed as a private detective under the Private Detective & Security Act of 1993 with an Illinois License No. of 117-00192.

4.    VTS Investigations, LLC. received a Summons and Complaint to be served upon **Scott Hultine** at 628 Forest View Drive, Geneva, Illinois, 60134.

5.    On 2 September 2004, at approximately 8:50 PM, I arrived at the aforementioned single family residence. Parked in the driveway was a red passenger van with Illinois Plate RHH715. Lights were on in the kitchen area. There is a window just to the west of the front door. There were no curtains or shades on this window so you could see into the kitchen area from the window as one is standing at the door. I knocked on the front door of the residence and no one answered. Two large dogs came to other front windows, more to the west, and barked loudly. I waited approximately and it appeared that no one was home.

6.    I returned to the residence on the same date at approximately 9:44 PM CST and observed a second van now parked in the driveway next to the red van. This blue van had Illinois plates 5881689.

I approached the front door and observed an adult female white wearing a black blouse and blue jeans standing in the kitchen. She looked at me through the previously described window as I approached the front door. I knocked but she did not answer. I stepped over to the window and observed a female child, approximately 5-8 years of age sitting on the kitchen floor with one of the dogs. It appeared that the young girl was lying low so as to not be seen.

I knocked on the window and observed the adult female white standing near the west end of the kitchen. I asked, "Are you Mrs. Hultine?" She came over to the window and mouthed something but very softly. I told her I had a court summons and complaint for her husband that I needed to serve upon her. I held up the summons for her to see. She was approximately 3-4 feet from the window and could easily see the legal notice.

Mrs. Hultine said that she would not open the door. Mrs. Hultine is a female white, approx 506, 135, 38ish with brownish blond hair.

7.    I advised Mrs. Hultine that her husband was served and that if she would not open the door to accept service that I would tape the legal papers to the kitchen window.

She again refused to open the door; therefore the papers were taped to the window.

8.    A copy of the summons was mailed via first class mail addressed to Scott Hultine, pursuant to the Illinois Code of Civil Procedure.

Further Affiant sayeth naught.

*William Vincent*

William Vincent
Illinois License No. 117-000192

SUBSCRIBED and sworn to before me
this 3ᵈ day of *September*, *2004*.

*Heidi L. Berna*
Notary Public

A true copy by photostatic process
Attest: _____
Asst. Clerk

**OFFICIAL SEAL**
HEIDI L. BERNA
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires June 28, 2006

# COMMONWEALTH OF MASSACHUSETTS

## Worcester Superior Court

**DOCKET NO: 04-1727A**

Surveys & Analysis, Inc.                  )
                                          )
                                          )
                                          )    MOTION TO APPOINT A
                **Plaintiff (s)**         )    SPECIAL PROCESS SERVER
                                          )    UNDER RULE 4C OF THE
                                          )    MASSACHUSETTS RULES
                                          )    OF CIVIL PROCEDURE
**v.**                                    )
                                          )
                                          )
Scott Hultine                             )
                                          )    # FILED
                                          )
                **Defendant (s)**         )    SEP 0 3 2004
                                          )    ATTEST:
                                          )    _Francis A. Ford_
                                                          CLERK

The Plaintiff moves this Honorable Court to appoint **FRANCIS J. TRAPASSO & ASSOCIATES, AND/OR HIS/HER AGENTS,** a Constable and a qualified and knowledgeable person in the service of court process and not a party to the action to be specially appointed by the court to serve the process in this action under the provision of Rule 4C of the Massachusetts and Federal Rules of the civil procedure in order to assure a substantial savings in time.

By its Attorney:

_James J. Richards_

James J. Richards, Esquire
Bowditch & Dewey, LLC
311 Main Street
Worcester, MA  01615

ORDER OF THE COURT APPOINTING A SPECIAL PROCESS SERVER PURSUANT TO RULE 4C, IT IS ORDERED THAT FRANCIS J. TRAPASSO AND/OR HIS/HER AGENTS IS HEREBY APPOINTED A SPECIAL PROCESS SERVER FOR THE ABOVE CAPTIONED CAUSE.

A true copy by photostatic process
Attest:
Asst. Clerk _____

By _Agnes J_____
Title _Justice_____
Court: _Worcester Superior Court_____
Date _9/3/04_____
Attest: _Joanne C_____

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

04-1727 A

SURVEYS & ANALYSIS, INC.      )
                              )
              Plaintiff,      )
                              )
v.                            )
                              )
SCOTT HULTINE,                )
                              )
              Defendant.      )

**FILED**

SEP - 2 2004

ATTEST: _____  CLERK

## COMPLAINT

### PARTIES

1.      Plaintiff, Surveys & Analysis, Inc. ("Surveys") is a Massachusetts corporation with its primary place of business at 538 Hartford Turnpike, Shrewsbury, Massachusetts 01545.

2.      Defendant, Scott Hultine ("Hultine") is an individual, who on information and belief, resides at 628 Forest View Drive, Geneva, Illinois 60134. Hultine is a former employee of Surveys who, on information and belief, is an owner, principle and officer of A.G.D., Inc. ("AGD").

### JURISDICTION AND VENUE

3.      Hultine has submitted to the jurisdiction and venue of this Court pursuant to Section 1.10 of an Employment, Nondisclosure, and Non-Competition Agreement dated April 16, 1999 (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit 1.

### FACTS

4.      Surveys is in the business of providing leak detection services to companies in the natural gas industry. Surveys operates a facility in Shrewsbury, Massachusetts. Surveys markets

and sells its services primarily to customers located in the Northeastern and Midwestern United States.

5.     Surveys hired Hultine as a Natural Gas Leak Detection Consultant on or about March 10, 1997. Hultine had no previous experience in the natural gas leak detection industry.

6.     As a condition of his employment with Surveys, Hultine signed the Agreement. See Exhibit 1.

7.     The Agreement forbids Hultine from competing with Surveys for a period of three (3) years following termination of his employment with Surveys. Specifically, the Agreement states:

> "I agree for a period of three (3) years following termination of my employment with Surveys & Analysis, Inc. within the geographical area of mid-west and any contiguous states not to engage in or contribute any knowledge to any work, employment or investment which is competitive with or similar with the service, product, process or apparatus with Surveys & Analysis, Inc. or on which I work with respect to which I had access to confidential information while at the company at any time during my employment." See Agreement, 1.6.

8.     The Agreement also forbid Hultine from disclosing Survey's confidential information. Specifically, the Agreement states:

> "I agree not to use (other than for SURVEYS & ANALYSIS, INC.) and not to directly or indirectly publish or otherwise disclose at any time (except as my duties to Surveys & Analysis, Inc. may require) either during or subsequent to my employment, any of Surveys & Analysis, Inc.'s "CONFIDENTIAL INFORMATION" (as defined below), whether or not the same was conceived, originated, discovered or developed, in whole or in part, by me." See Agreement, 1.3.

9.     At the time it hired Hultine, Surveys had a long-standing contract with Nicor, Inc.'s subsidiary, Nicor Gas ("Nicor"), a natural gas provider in Illinois. Revenue from Nicor represented approximately fifteen percent (15%) of Surveys' total annual revenue.

2

10.    During his employment with Surveys, Hultine worked exclusively on the Nicor contract. Hultine managed Surveys' employees at Nicor. Hultine had access to and became very familiar with virtually every facet of Surveys' business and the Nicor contract.

11.    Among other things, Hultine knew of and had access to Surveys' strategic business information, including information relating to leak detection processes and methods, productivity rates, wage structures, hiring practices, pricing strategies and structures, customer lists and sales and marketing efforts.

12.    Unknown to Surveys, on or about April 9, 2002, while still an employee of Surveys, Hultine incorporated AGD with the Illinois Secretary of State, and designated himself as President. Hultine was still an employee of Surveys and knew that under the terms of the Agreement he could not compete with Surveys.

13.    According to AGD's website, AGD "was established in Illinois to service mid-west utility companies," the precise region covered by the Agreement. Further, AGD advertises AGD as a company established to focus "solely on gas leak detection" and advertises Hultine's "experience in the utility industry as the key to our successful operation."

14.    After forming AGD, Hultine continued his employment with Surveys, apparently to gain further confidential information about Surveys, to enhance his relationship with Nicor and to damage Surveys' relationship with Nicor.

15.    On or about July 9, 2002, Hultine's employment with Surveys was terminated.

16.    Hultine and AGD thereafter immediately began providing leak detection services to Nicor, in express violation of the Agreement, substantially reducing Surveys' benefit in its contract with Nicor.

17.    In late 2003, AGD was awarded a contract with Nicor worth approximately $1.5 million over three (3) years to provide natural gas leak detection services, in direct competition with Surveys.

18.    On information and belief, Hultine is the sole shareholder and employee of AGD.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract

19.    Surveys repeats and realleges all of the foregoing paragraphs of the Complaint as if fully set forth herein.

20.    Hultine is contractually obligated, among other things, to not compete against Surveys for three (3) years after termination of his employment with Surveys and not to disclose Surveys' confidential information.

21.    Hultine has breached his Agreement with Surveys as set forth above.

22.    Surveys has been damaged by Hultine's breach of contract.

### COUNT II
### Breach of Covenant of Good Faith and Fair Dealing

23.    Surveys repeats and realleges all of the foregoing paragraphs of the Complaint as if fully set forth herein.

24.    Hultine entered into an Agreement with Surveys. This Agreement is governed by Massachusetts law and, under Massachusetts law, Hultine had an obligation and duty of good faith and fair dealing with Surveys.

25.    Hultine breached and/or violated his obligation and duty of good faith and fair dealing as a result of the conduct described above.

{J:\CLIENTS\lit\300482\0001\00449226.DOC;3}

26.    Surveys has been damaged by Hultine's breach of the implied covenant of good faith and fair dealing.

## COUNT III
### Breach of Fiduciary Duty

27.    Surveys repeats and realleges all of the foregoing paragraphs of the Complaint as if fully set forth herein.

28.    Hultine was in a fiduciary relationship with Surveys and owed fiduciary duties to Surveys, including a duty of loyalty, a duty not to compete and a duty not to disclose Surveys' confidential information.

29.    For the reasons stated above, Hultine breached his fiduciary duties to Surveys.

30.    Surveys has been damaged by Hultine's breach of his fiduciary duties, and is entitled to damages as a result of such breach.

## COUNT IV
### Tortuous Interference with Contractual/Advantageous Relationships

31.    Surveys repeats and realleges all of the foregoing paragraphs of the Complaint as if fully set forth herein.

32.    Surveys had a binding contract with Nicor and an advantageous business relationship with Nicor.  Hultine had knowledge of Surveys' contract with Nicor and of Surveys' advantageous relationship with Nicor.

33.    On information and belief, Hultine intentionally interfered by improper means and/or with improper motive with Surveys' advantageous relationship and contract with Nicor.

34.    Surveys has lost its advantageous relationship with Nicor and has substantially lost the benefit of its contract with Nicor as a direct result of Hultine's tortuous interference.

35.    Surveys has been damaged by Hultine's tortuous interference.

5

## COUNT V
### Misappropriation of Trade Secrets

36.    Surveys repeats and realleges all of the foregoing paragraphs of the Complaint as if fully set forth herein.

37.    Hultine possesses trade secret information owned by Surveys.

38.    Hultine was expressly and impliedly obligated not to make use of any Surveys' owned trade secret information.

39.    Hultine unlawfully took Surveys' trade secrets and intentionally converted them to his own use without authorization.

40.    Surveys has been damaged by Hultine's use of Surveys' owned trade secret information.

## COUNT VI
### Injunctive Relief

41.    Surveys repeats and realleges all of the foregoing paragraphs of the Complaint as if fully set forth herein.

42.    Hultine has used, and unless enjoined by this Court will continue to use, Surveys' trade secrets, know-how, confidential information and good will.

43.    Such use has violated and will continue to violate the terms of the Agreement for his own benefit and to the detriment of Surveys.

44.    Unless Hultine is restrained from the actions described above, Surveys will suffer irreparable injury.

45.    There is a substantial likelihood that Surveys will prevail on the merits of one or all of its claims set forth herein.

46.    Surveys is at risk to be harmed to a greater degree by the absence of the injunctive

6

relief sought herein than Hultine would be harmed by Hultine by the granting of such relief.

48.    Such injunctive relief would be in the public interest.

## **PRAYERS FOR RELIEF**

WHEREFORE, Surveys & Analysis, Inc. respectfully requests that this Court:

(a)    Issue preliminary and than permanent injunctive relief enjoining Hultine, his agents, servants, affiliates, officers, directors, employees, employers, attorneys and those persons in active concert or participation with Hultine from:

      (i)    using and/or disclosing any trade secrets, know-how or other confidential, technical or business information of Surveys;

      (ii)   contacting and otherwise communicating with Surveys' customers and suppliers until July 10, 2005;

      (iii)  communicating with any potential customer about Surveys' products and related business until July 10, 2005;

      (iv)   engaging in any other activities prohibited by the express terms of the Agreement with Surveys;

      (v)    competing with Surveys until July 10, 2005;

      (vi)   contacting or communicating with any current Surveys employee having knowledge of the trade secrets, know-how, confidential and proprietary information of Surveys;

(b)    Require Hultine, his agents, servants, affiliates, officers, directors, employers and attorneys and those persons in active concert or participation with Hultine to immediately return to Surveys all documents and other materials in his possession or control which originally came from Surveys, or which were developed by or used in connection with Surveys' business, and to

7

deliver to Surveys all documents and other information evidencing Hultine's use of Surveys' know-how, confidential information and trade secrets;

      (c)    Impose a constructive trust for the benefit of Surveys over all profits, advantages, and payments Hultine, his agents, employers and assigns have received and/or receive by virtue of Hultine's wrongful acts described herein;

      (d)    Require that Hultine account to Surveys for all profits, income, advantages and payments that Hultine, his agents, employers and assigns have received and/or received by virtue of Hultine's wrongful acts described herein;

      (e)    Award compensatory damages to Surveys to the full extent permitted by law;

      (f)    Order such other legal and equitable relief as is just and appropriate.

## JURY TRIAL BY DEMAND

Surveys & Analysis, Inc. hereby demands a trial by jury for all issues so triable.

SURVEYS & ANALYSIS, INC.
By its attorneys,

Michael P. Angelini (BBO# 019340)
James J. Richards (BBO# 642937)
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
(508) 791-3511

Dated: September 2, 2004

A true copy by photostatic process
Attest:
Asst. Clerk

## SURVEYS & ANALYSIS, INC.

EMPLOYMENT, NONDISCLOSURE, & NON-COMPETITION AGREEMENT

AGREEMENT, made this _16_ day of _April_, 199_9_, BY _Scott Hultine_, of _Surveys + Analysis_

TO: Surveys & Analysis, Inc., of 538 Hartford Turnpike, Shrewsbury, Massachusetts 01545.

    1.    In consideration of my employment/continuing employment in any capacity with Surveys & Analysis, Inc., and of the salary or wages paid for my services in the course of such employment, I agree to the following:

    1.1.    I agree to communicate to Surveys & Analysis, Inc. promptly and fully all inventions, discoveries, concepts and ideas, whether patentable or not, including but not limited to hardware and apparatus, processes and methods, formulas, computer programs and techniques, as well as improvements thereof and knowledge related thereto (hereinafter collectively referred to as "DEVELOPMENTS"), conceived, completed, or reduced to practice (whether solely by me or jointly with others) during the period of my employment by Surveys & Analysis, Inc., which are related to the present or prospective business, work or investigations of Surveys & Analysis, Inc., or which result from any work I perform with the use of any equipment, facilities, materials or personnel of Surveys & Analysis, Inc., or which result from or are suggested by any work which I may do for or on behalf of Surveys & Analysis, Inc.;

    1.2.    I agree to assign, and do hereby assign, to Surveys & Analysis, Inc. or Surveys & Analysis, Inc's designee, my entire right, title and interest in and to all such DEVELOPMENTS and all copyrights and mask work rights in such DEVELOPMENTS and any patent applications filed and patents granted thereon, including those in foreign countries; and, both during my employment by Surveys & Analysis, Inc., and thereafter, to execute any patent papers covering such DEVELOPMENTS as well as any papers that Surveys & Analysis, Inc. may consider necessary or helpful in obtaining or maintaining said patents during the prosecution of patent applications thereon or during the conduct of any interference, litigation or any other matter in connection therewith; all expenses incident to the filing of any such interference, litigation or other controversy shall be borne by Surveys & Analysis, Inc.;

    1.3.    I agree not to use (other than for SURVEYS & ANALYSIS, INC.) and not to directly or indirectly publish or otherwise disclose at any time (except as my duties to Surveys & Analysis, Inc. may require) either during or subsequent to my employment, any of Surveys & Analysis, Inc's "CONFIDENTIAL INFORMATION" (as defined below), whether or not the same was conceived, originated, discovered or developed, in whole or in part, by me;

    1.4.    I agree that CONFIDENTIAL INFORMATION means information or material which is not generally available to or used by others or the utility or value of which is not generally known or recognized as standard practice, whether or not the underlying details are in the public domain, including:

1.4.1.   information or material which relate to Surveys & Analysis, Inc's inventions, technological developments, "know-how," purchasing, accounting, merchandising, or licensing;

1.4.2.   information contained in or derived from Surveys & Analysis, Inc's Client Lists, whether inactive, active or prospective;

1.4.3.   trade secrets as defined in the Restatement of Torts;

1.4.4.   software in various stages of development (source code, object code, documentation, diagrams, flow charts), designs, drawings, specifications, models, data and customer information; and

1.4.5.   any information of the type described above which Surveys & Analysis, Inc. obtained from another party and which Surveys & Analysis, Inc. treats as proprietary or designates as confidential, whether or not owned or developed by Surveys & Analysis, Inc.;

1.5.   I agree to deliver to Surveys & Analysis, Inc. promptly upon request or on the date of termination of my employment all documents, copies thereof and other materials in my possession pertaining to the business of Surveys & Analysis, Inc., including, but not limited to, CONFIDENTIAL INFORMATION, and thereafter to promptly return documents and copies thereof and other materials in my possession pertaining to the business of Surveys & Analysis, Inc. and originating with Surveys & Analysis, Inc. that come into my possession;

1.6.   I agree for a period of three (3) years following termination of my employment with Surveys & Analysis, Inc. within the geographical area of _Midwest_____ and any contiguous states not to engage in or contribute my knowledge to any work, employment or investment which is competitive with or similar to the service, product, process, or apparatus of Surveys & Analysis, Inc. or on which I worked or with respect to which I had access to CONFIDENTIAL INFORMATION while at the company at any time during my employment; however, I shall be permitted to engage in such proposed work or activity, and Surveys & Analysis, Inc. shall furnish me a written consent to that effect, if I furnish to Surveys & Analysis, Inc. clear and convincing written evidence, including assurances from me and my new employer, that the fulfillment of my duties in such proposed work or activity will not cause me to disclose, base judgment upon, or use any such CONFIDENTIAL INFORMATION. It is understood that the geographical area set forth in this clause is divisible so that if this clause is invalid or unenforceable in an included geographical area, that area is severable and this clause remains in effect for the remaining included geographic areas in which the clause is valid. It is understood that the time period set forth in this clause is divisible so that if this clause is invalid or unenforceable for an included time period, that time period is severable and this clause remains in effect for the longest remaining time period in which the clause is valid;

1.7.   I agree to assign to Surveys & Analysis, Inc. my entire right, title and interest in and to any DEVELOPMENTS and all copyrights, mask work rights, patent applications filed and patents granted thereon, including those in foreign countries with respect to DEVELOPMENTS relating to my activities while working for Surveys & Analysis, Inc. and conceived or made by me, alone or with others, within one year after termination of my employment if conceived as a result of and if attributable to work done during such employment and relates to a method, substance, machine, article of manufacture or improvement therein within the scope of the business of Surveys & Analysis, Inc.;

1.8.    I agree that this Agreement represents the full and complete understanding between me and Surveys & Analysis, Inc. with respect to the subject matter hereof and supersedes all prior representations and understandings, whether oral or written;

1.9.    I agree that my obligations under this Agreement shall be binding upon my heirs, executors, administrators, or other legal representatives or assigns, and that this Agreement shall inure to the benefit of Surveys & Analysis, Inc., its successors and assigns.

1.10    I agree that this contract shall be interpreted according to the laws of the Commonwealth of Massachusetts without application of that states choice of law rules. I also agree that the proper jurisdiction and venue for this action shall be the Commonwealth of Massachusetts.

2.    I represent, except as I have written below, that I have no agreements with or obligations to others with respect to DEVELOPMENTS, PROPRIETARY INFORMATION or CONFIDENTIAL INFORMATION, belonging either to Surveys & Analysis, Inc. or to others, or in conflict with the foregoing.

3.    I understand that this Agreement may not, on behalf of or in respect to Surveys & Analysis, Inc., be changed, modified, released, discharged, abandoned or otherwise terminated, in whole or in part, except by an instrument in writing signed by the President of Surveys & Analysis, Inc.

4.    I agree that during or upon termination of my employment with Surveys & Analysis, Inc., I shall, if requested by Surveys & Analysis, Inc., reaffirm my recognition of the importance of maintaining the confidentiality of Surveys & Analysis, Inc's CONFIDENTIAL INFORMATION and reaffirm all of the obligations set forth in Paragraph 1 of this Agreement.

*Scott Hultin*
_____
Employee (Print Name)

*Scott Hult*
_____
Employee's Signature

*Kenneth Henly*
_____
Witness

*4/16/99*
_____
Date

A true copy by photostatic process
Attest:
Asst. Clerk