UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SURVEYS & ANALYSIS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SCOTT HULTINE, <br><br> Defendant. | C.A. No. 04-CV-40195-FDS <br><br> **PROPOSED REPLY MEMORANDUM FILED WITH MOTION FOR LEAVE OF COURT** |

**REPLY MEMORANDUM OF SCOTT HULTINE IN SUPPORT OF HIS MOTION TO TRANSFER THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE <u>NORTHERN DISTRICT OF ILLINOIS</u>**

To avoid the transfer of this case to the more convenient and appropriate forum of Illinois, Surveys & Analysis, Inc. ("Surveys") identifies a number of witnesses residing outside of Illinois whose testimony is cumulative and immaterial to the disputed issues in this case. Surveys' opposition brief and the supporting affidavit of Paul Garabedian (Surveys' Chief Operating Officer) further confirm that the central issue in this case is whether Hultine's work with Nicor Gas ("Nicor") in northeast Illinois violates his Employment, Nondisclosure & Non-Competition Agreement ("Agreement"). Here, the materiality of the testimony of Hultine's non-party witnesses – who are employed by Nicor and reside in Illinois – significantly outweighs the materiality of the testimony of Surveys' witnesses who live in Massachusetts and New York. In addition, the Court should discount Surveys' forum selection clause because it was imposed unilaterally, two years after Surveys hired Hultine. Therefore, the Court should transfer this case to Illinois for the convenience of the witnesses and in the interests of justice.[1]

---

[1] In support of this reply memorandum, Hultine has filed herewith as Exhibit A the Supplemental Affidavit of Scott Hultine.

I. **The Convenience of Hultine's Material Witnesses Outweighs the Convenience of Surveys' Immaterial and Cumulative Witnesses.**

　　A. **The Convenience of Material Witnesses Is Of Paramount Importance In a Transfer Determination.**

The convenience of the witnesses is the most important factor in the transfer analysis. *See Brant Point Corp. v. Poetzsch*, 671 F. Supp. 2, 3 (D. Mass. 1987) ("The convenience of the witnesses is 'probably the most important factor . . . in passing on a motion to transfer under 28 U.S.C. § 1404(a)."). In assessing the convenience of the witnesses, the Court must consider the "nature and quality" of the witnesses' testimony. *See Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18-19 (D. Mass. 1991) (weighing relative weight of witnesses' testimony and ordering transfer where "the testimonial evidence offered by the [witnesses] is important in that it goes to the central factual issues of the plaintiff's case."). The Court should procure live testimony of *material* non-party witnesses, "especially . . . when the 'qualitative value' of the witnesses' testimony is high." *See id*. at 20 (quoting *Brant Point Corp.*, 671 F. Supp. at 4). Conversely, the Court must discount those witnesses whose testimony is immaterial or cumulative. *See Dwyer v. General Motors Corp.*, 853 F. Supp. 690, 693 (S.D.N.Y. 1994) (concluding that convenience of witnesses factor did not weigh in favor of transfer where some witnesses were expected to testify about matters not in dispute and the "materiality of the testimony" of other witnesses was "not apparent"); *Kramer v. Burlington Northern, Inc.*, 453 F. Supp. 114, 117 (W.D. Wis. 1978) (concluding testimony on same subject was redundant and cumulative and therefore did not support transfer), *aff'd,* 610 F.2d 819 (7th Cir. 1979).

**B.     Hultine's Witnesses Are Material and They Reside in Illinois.**

The central issue in this case is whether Hultine's business relationship with Nicor in northeast Illinois violates his Agreement.[2]  *See* Complaint; Hultine's Memorandum in Support of Motion to Transfer at pp. 8-9.  Surveys' opposition memorandum and Garabedian's affidavit confirm this.  Garabedian makes the following statements in his affidavit:

- "Surveys had a long-standing contract with [Nicor], a natural gas provider in Illinois."  Garabedian Aff. ¶ 5.

- "Revenue from Nicor represented a substantial portion of Surveys' total annual revenue, which Surveys has now lost."  *Id.* ¶ 5.

- "Hultine worked exclusively on the Nicor contract. . . .  Hultine was trusted with the responsibility of dealing with Nicor's management on Surveys' behalf.  Hultine had access to and became very familiar with . . . the Nicor contract.  In many areas, Hultine had complete control over Surveys' business at Nicor."  *Id.* ¶ 6.

- "Hultine facilitated the flow of all information between Surveys and Nicor and Surveys and its Illinois employees."  *Id.* ¶ 7

Surveys makes similar representations in its opposition memorandum.  For example, Surveys states that Hultine "displaced Surveys as the lead detection provider for Nicor," and that Hultine "was the face of Surveys at Nicor" and "handled all facets of Surveys' business and the Nicor contract."  Opposition Memorandum at p. 6.  Hultine's relationship with Nicor is at the heart of Surveys' Complaint.

Hultine intends to call four Nicor employees as witnesses to testify on the issue of whether Hultine's work with Nicor violates the Agreement.  All of these witnesses are based in Illinois.  Paul Qualiato (Program Administrator) and Somali Tomczak (Code Compliance

---

[2] In its complaint, Surveys alleges, among other things, that it had a long-standing contract with Nicor, Complaint ¶ 9; while employed by Surveys, Hultine worked exclusively on the Nicor contract, *id*. ¶ 10; Hultine had access to strategic business information and obtained confidential information about Surveys to enhance his relationship with Nicor and damage Surveys' relationship with Nicor, *id*. ¶¶ 11, 14; following his termination from employment with Surveys, Hultine began providing leak detection services to Nicor, *id*. ¶¶ 15-16; and Hultine's new employer – AGD – was awarded a contract with Nicor, *id*. ¶ 17.

Department) will testify about Nicor's concerns regarding services provided by Surveys; the public safety issues concerning natural gas distribution and the importance of leak surveys; and Nicor's decision to hire AGD, Inc. ("AGD"). Roy Rodriguez (Field Test/Auditor) and Patty McKibbon (Trainer) will both testify about the work currently performed by AGD for Nicor. The individually unique and non-cumulative testimony of the Nicor witnesses is expected to establish, among other things, that (1) certain work performed by AGD for Nicor is *different* from the work performed by Surveys; (2) Surveys was unable to perform timely work for Nicor; and (3) the importance of timely leak surveys and safety issues concerning natural gas distribution led Nicor to seek out AGD's services when Surveys was unable to perform timely leak surveys.

C.   **Survey's Witnesses Are Immaterial and Cumulative.**

In contrast to the material testimony of witnesses who work for Nicor and reside in Illinois, Surveys' witnesses offer testimony that is immaterial and cumulative. For example, *three* of Surveys' witnesses are expected to testify about "Hultine's execution of the Agreement," yet only *one* of these witnesses is alleged to have actually *witnessed* the execution of the Agreement. In any event, that issue is immaterial – Hultine does *not* dispute that he signed the Agreement. [3] *See* Hultine Supp. Aff. ¶ 2. Surveys has listed *four* witnesses who are expected to testify about the "termination of Hultine's employment," but, Hultine's termination by Surveys is neither disputed by Hultine nor relevant to whether his Nicor business violated the Agreement.[4] *See* Hultine Aff. ¶ 7 ("On or about July 9, 2002, Surveys terminated my employment."). Similarly, Surveys identifies *three* witnesses who are expected to testify about

---

[3] Ken Harber, Patricia Carrigan, and Brian Cotting are expected to testify about "Hultine's execution of [the] Agreement." *See* Garabedian Aff. ¶ 8. Only Harber is identified as a "witness of [the] Agreement." *Id.*

[4] Bridget Foley, John Whitney, John Baez, and Garabedian are expected to testify about "[the] termination of Hultine's employment." *See* Garabedian Aff. ¶¶ 8, 9.

the "terms of Hultine's employment" without explaining how the general, unspecified terms of employment are relevant to whether Hultine's current work for Nicor violates the Agreement.[5] Although Surveys lists two party witnesses to testify about "damages to Surveys as a result of Hultine's breach [of the Agreement]," in a transfer analysis "greater weight should be given to the convenience of witnesses on liability than to witnesses on damages."[6] *See Howell v. Shaw Indus.*, Nos. 93-2068 and 93-2638, 1993 WL 387901, at *5 (E.D. Pa. Oct. 1, 1993) (transferring case because, among other things, party's witnesses on issues of liability were located in another district); *see also McCrystal v. Barnwell County*, 422 F. Supp. 219, 223 (S.D.N.Y. 1976) (transferring case and noting that the convenience of witnesses testifying to damages "must be subordinated to the convenience of those parties who will testify on the question of liability"). In short, the cumulative and immaterial testimony of Surveys' witnesses does not justify maintaining the case in Massachusetts in light of the non-party witnesses who are employed by Nicor and reside in Illinois.

## II.  The Court Should Discount Surveys' Forum Selection Choice Because It Was Imposed Unilaterally, Two Years After Surveys Hired Hultine.

Finally, although Surveys relies on the forum selection clause in the Agreement, the Court should discount the importance of that clause because of the circumstances in which Hultine signed the Agreement. As an initial matter, Surveys did not inform Hultine that he would have to sign a noncompete agreement when he was hired in March 1997. *See* Hultine Supp. Aff. ¶ 2; Complaint ¶ 5. In fact, Surveys presented the Agreement to Hultine in April 1999, more than *two years* after his employment began. *See* Hultine Supp. Aff. ¶¶ 2-3;

---

[5] Harber, Carrigan, and Cotting are all expected to testify about "terms of Hultine's employment." *See* Garabedian Aff. ¶ 8.

[6] Baez and Garabedian – both of whom are current employees of Surveys – are expected to testify about, among other things, "damages to Surveys as a result of Hultine's breach of [the] Agreement." *See* Garabedian Aff. ¶ 9.

Complaint Ex. 1 (Agreement).  Hultine did not have an opportunity to negotiate the terms of the Agreement and, in fact, he signed it the very day it was presented to him.  *See* Hultine Supp. Aff. ¶ 3.  Given Surveys' overreaching and the dubious circumstances in which Surveys imposed the Agreement on Hultine, the Court should discount the choice of law provision set forth in the Agreement.  Further, as described in more detail in Hultine's memorandum in support of his motion to transfer, the forum selection clause is substantially outweighed by the other factors that compel transfer of this case to Illinois.

     For these reasons, and the reasons set forth in Hultine's motion to transfer and supporting memorandum, Hultine respectfully requests that the Court transfer this case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a).

          Respectfully submitted,

          SCOTT HULTINE

          By his attorneys,

          HOLLAND & KNIGHT LLP

          */s/ David J. Santeusanio*
Paul G. Lannon, Jr. (BBO # 563404)
David J. Santeusanio (BBO # 641270)
10 St. James Avenue
Boston, Massachusetts  02116
(617) 523-2700

Dated:  November 23, 2004

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

CERTIFICATE OF SERVICE

     I hereby certify that on November 23, 2004, I electronically filed the Proposed Reply Memorandum of Scott Hultine in Support of His Motion to Transfer This Action to the United States District Court for the Northern District of Illinois with the Clerk of Court using the CM/EMF system, which will send notification of such filing to the following attorneys of record:

    Michael P. Angelini, Esq.
    Bowditch & Dewey, LLP
    311 Main Street, P.O. Box 15156
    Worcester, MA 01615-0156

    James J. Richards, Esq.
    Bowditch & Dewey, LLP
    311 Main Street, P.O. Box 15156
    Worcester, MA 01615-0156

                                      */s/ David J. Santeusanio*
                                      David J. Santeusanio, Esq.
                                      Holland & Knight LLP
                                      10 St. James Avenue
                                      Boston, Massachusetts 02116

# 2347609_v2